S. PEARSON & SON, INC., Claimant, *v.* THE STATE OF
NEW YORK.

Claim No. 14900.

(State of New York, Court of Claims, May, 1920.)

Claims — against state of New York — contracts — damages —
Barge canal.

> Items of claim arising out of the performance by claimant of
> a barge canal contract in dredging a channel in the Mohawk
> river, (1) for certain excavation work below the grade line
> shown on the plans, which it was claimed misrepresented the
> conditions to be encountered in excavating the grade line, and in
> connection with said item, for damages claimed as a result of the
> state's breach of its contract to complete a certain dam during
> 1909, in consequence of which claimant was obliged to dredge a
> channel for the flotation of a part of its plant, (2) for damages
> resulting from interference with claimant's work by the wires
> of an electric company which, without the consent of either the
> claimant or the state, had been strung across the site of the
> contract after claimant had taken possession thereof, (3) for
> damages occasioned by the increased cost of excavation result-
> ing from alleged misrepresentation and breach of warranty as
> to the character of the material to be encountered in perform-
> ing the work called for by the contract, and (4) for damages
> for increased cost of plant claimed to have been made neces-
> sary by the alleged misdescription of material to be excavated,
> considered, and the claim herein dismissed with the exception
> of an allowance made for damages as specified in item 2 above.

CLAIM arising out of Barge canal contract.

Thomas Gilleran (William H. Harris, of counsel),
for claimant.

Charles D. Newton, attorney-general (Wilber W.
Chambers, deputy attorney-general, of counsel), for
State of New York.

SMITH, J.   This claim arises out of the performance
by claimant of barge canal contract 20-B.   The con-

tract was for dredging a channel in the Mohawk river between Mindenville and Canajoharie, a length of ten and one-tenth miles, and the width of the channel or excavated prism was to be 200 feet, and the channel was to be excavated to a grade line fixed by the plans which would afford a flotation depth of water of at least 12 feet when water was maintained at designated pool elevations.

The claim as filed specifies ten items of complaint upon each of which it asks judgment. In considering these items I shall refer to them as described and numbered in the state's brief, as they are not separately stated and numbered in the formal claim as filed.

Upon the trial item 2, alleged in the 8th paragraph of the claim as " Excavation flattening slopes, etc., 9893 cu. yds.," amounting to $6,311.63; item 3, alleged in said 8th paragraph as " Excavation necessary for placing 4th class rip-rap, etc., 5820 cu. yds.," amounting to $3,713.16; item 4, alleged in said 8th paragraph as " Excavation necessary for placing cobblestone protection, etc., 8085 cu. yds.," amounting to $5,158.23; item 5, alleged in paragraph 9 of the claim and being for fourth class rip-rap not allowed by the state amounting to $66,609.38; and item 6, alleged in the 10th paragraph of the claim for cobblestone protection not allowed by the state, amounting to $39,626, were abandoned and withdrawn by claimant, and as all of these items are for work not called for by the contract and not embraced in any alteration contract or extra and unspecified work order as required by section 6 of chapter 147, Laws of 1903, they should be dismissed.

Upon the trial claimant also abandoned and withdrew that part of item 7, alleged in the 11th paragraph of the claim, which claims damages for the alleged " increased cost of excavation and disposal of

material because of delays while plant was unable to float," amounting to $52,801.56, stating that this damage is included in another item of the claim. It should, therefore, be dismissed.

This leaves the following items to be considered, viz., item 1, part of item 7, and items 8, 9 and 10.

Item 1 is, as alleged in the 8th paragraph of the claim for " excavation of siltration, 365,210 cu. yds.," which at the contract price, sixty-three and eight-tenths cents per cubic yard, would amount to $233,033.98.

It was conceded upon the trial that the word " siltration " should have been " siltation," and that the term " excavation of siltation " means the excavation of silt and other loose material which has been washed into the excavated area after the original excavation of that area.

With that understanding of the meaning of the item, there is no evidence in the record to support it. In fact, it was frankly admitted by claimant on the trial that it did not claim to recover under this item as excavation of siltation, but for excavation below the grade line shown on the plans made unavoidably necessary by the presence at and above the grade line of a large number of boulders and a considerable quantity of rock, conditions which it is claimed were not disclosed by the plans, as to which, claimant claims, the plans misrepresented the conditions to be encountered in excavating to the grade line, which made excavation to the grade line more troublesome and more expensive, and that a measure of the damage caused thereby might be the cost at contract price of the excavation below grade.

Claimant cannot recover for this excavation at the contract price as excavation, because the material, if any, so excavated was outside of the excavation lines as shown on the plans, and it does not appear that the work was the subject of any alteration contract or

extra and unspecified work order (Laws of 1903, chap. 147, § 6), in addition to which the specifications expressly provide that no payment will be made for any excavation outside the lines shown on the plans. *Empire Engineering Corporation* v. *State of New York,* 1 State Dept. Rep. (unoff.) 326; *Burgard* v. *State of New York,* 17 State Dept. Rep. 1, 68, 70; *O'Brien* v. *City of New York,* 139 N. Y. 543.

It is a sufficient answer to claimant's contention that it should recover on account of this item as damage for the alleged misrepresentation of the plans as to the character of material to be encountered to note that the item is not so pleaded in the claim, in addition to which there is another item in the claim for damages alleged to have resulted from such alleged misrepresentations and from breach of warranty as to the character of material to be encountered (item 9), which damages, it was conceded by claimant, include the damages claimed in item 1.

The state moved upon the trial, at the close of claimant's case, for dismissal of item 1 on the ground that claimant had not proven, with reference to it, facts sufficient to constitute a valid claim against the state. Decision of that motion was reserved. For the reasons indicated above, the motion should be granted and the item disallowed and dismissed, and an exception on behalf of claimant noted.

The part of item 7 which remains undisposed of is alleged in the 11th paragraph of the claim and is for damages claimed as the result of the state's breach of its contract to complete the construction of the Fort Plain dam during the year 1909, as a result of which claimant was obliged to dredge a channel for the flotation of a part of its plant from the St. Johnsville bridge westerly to Mindenville, to claimant's damage in the sum of $17,752.75. The state claims

there was no such contract. Claimant urges the agreement is found in paragraph 24-S of the special specifications, which reads in part as follows: " The retaining dam at Mindenville has been completed and it is expected that the dam at Fort Plain will be completed during 1909 and possibly the dam at Canajoharie also."

The Fort Plain dam was not completed until about October 1, 1911, and claimant did, in the late fall or early winter of 1910, excavate a channel to float a part of its plant from St. Johnsville bridge to Mindenville lock to store it there for the winter.

The state did not warrant or agree that the Fort Plain dam would be completed during the year 1909. It expressed a hope or expectation merely that it would be so completed. Had a positive agreement or warranty been intended, the words " agreed " or " warranted " would have been used. The construction of the dam was, as it was required by law to be, the subject of another contract, liable to the delays, hindrances and interruptions which frequently disappoint expectation with respect to construction work. The word " expected " was, therefore, used advisedly and intelligently and expressed exactly the understanding of both parties.

Acting upon this understanding of the provision in question, Mr. Japp, claimant's director and managing engineer, prior to signing the contract, visited the site of the dam contract, observed the state of progress thereon and concluded that its completion during the year 1909 was within reasonable expectation. Why it was not completed does not appear, hence it does not appear that the failure to complete it was due to any act or omission of the state.

Moreover the excavation for which it is here sought to charge the state was done for the benefit of claim-

ant and not for the state. It was done to get claim-
ant's plant to winter quarters at Mindenville lock. It
was no part of the duty of the state to provide winter
quarters for claimant's plant, nor means of access
thereto. Such of this excavation as was within the
contract lines and was permanently removed from
the channel, was within the terms of the contract and
was paid for as such. Some of the material was
excavated from within the contract lines, but was not
placed ashore for lack of time and of plant facilities.
It was cast aside, in the river, whence it had to be
re-excavated and placed ashore. When re-exca-
vated and placed ashore, it was paid for. The
state cannot be charged for work made valueless by
claimant's lack of time and plant facilities. Some of
the excavation was below grade and hence entirely
outside the contract provision in addition to which it
was done for claimant's sole benefit. For the reasons
stated, item 7 should be dismissed.

Item 8 is for damages resulting from interference
with claimant's work by the wires of the Mohawk
Hydro-Electric Company. This item is alleged in the
12th paragraph of the claim and the damages,
as stated in the claim, amounted to $5,445.79. The
amount claimed on the trial was reduced to $1,320.79.
The Hydro-Electric Company had strung its high ten-
sion wire across the site of the contract after claimant
had taken possession thereof, without the consent of
either claimant or the state. It was established that
these wires hindered and delayed claimant and com-
pelled it for a time to use part of its plant unprofit-
ably. The first interference caused by the wires was
on August 1, 1913. The wires had been removed by
August 11, 1913. During this period the No. 2 dipper
dredge was engaged at unproductive work for an
aggregate of thirty-six hours and the tugboat for

an aggregate of eight hours. Other delays and hindrances testified to by claimant's witness Watt occurred after August thirteenth, and after the wires had been removed, hence were not attributable to the wires.

Adopting the method and values used by claimant in computing the damage caused by the presence of the wires, the amount of claimant's damage is found to be $502.48, and I think it should recover that amount. The state urges that this interference was one of the risks which claimant assumed by virtue of paragraph 23 of the specifications. I do not think so. It was the duty of the state to furnish the contractor with the site upon which the latter's work was to be performed, and I think also to keep it furnished and available at least in the circumstances here disclosed. *Lane Brothers Co.* v. *State of New York,* 16 Court of Claims Rep. 238; *Del Genovese* v. *Third Ave. R. R. Co.,* 13 App. Div. 412.

Item 9 is for damages occasioned by increased cost of excavation resulting from alleged misrepresentation and breach of warranty as to the character of the material to be encountered in performing the work of excavation called for by the contract, and is for $388,592.51. It is alleged in the 13th paragraph of the claim. The allegation is that claimant was compelled to excavate large quantities of boulders, hard material and rock within the contract lines, but not called for in the contract or specifications or designated on the plans, not provided thereunder or contemplated therein; that at the time of entering into the contract the character of material to be encountered was particularly represented by the state upon the plans for the work; that claimant entered into the contract relying upon such representations; that the representations were not true in that the boulders,

hard material and rock were not shown on the plans; that the examinations and investigations of the site of the work and of the material to be excavated, claimed to have been made by the state, if properly made, would have shown the existence of the said boulders, hard material and rock; that the state possessed information concerning the boulders and hard material which it deliberately, wrongfully and fraudulently neglected to make part of the contract, specifications or plans; that claimant had not sufficient time to make its own examination of material and hence relied on the plans and specifications; that it performed its work under protest and suffered great damage.

Upon the trial the charge of deliberate and willful misrepresentation was withdrawn by claimant and the candor and good faith of the state officers in the preparation of the plans was conceded. The allegation that the state possessed information concerning boulders and hard material which it neglected to exhibit on the plans is not established by the evidence. On the contrary, the evidence establishes the fact that the information as to the character of material to be excavated which had been obtained by the state in the course of its preliminary investigation and exploration of the site of the contract was fairly exhibited with reasonable accuracy by the plans. The methods and manner adopted by the state in conducting its preliminary investigation and exploration were intelligent and suitable in view of the character and extent of the work to be done.

It is unquestioned that more definite information as to sub-surface conditions would have resulted from more frequent borings, and the substitution of core boring and wash drill methods for the driven rod soundings, but in view of the magnitude of the entire

work of constructing the canal, and the great expense involved in making explorations with such care and detail as to insure absolute accuracy of information, coupled with the fact that modern methods of rock breaking without drilling and blasting and of large scale hydraulic dredging render absolute accuracy less important, it cannot be said that the state did not adopt appropriate means and methods to ascertain with reasonable approximation the conditions to be encountered in the performance of this contract. The plans did not disclose the method employed in ascertaining sub-surface conditions except as to a very few locations where it was indicated that the wash drill method had been employed. Inquiry, however, would have revealed the fact that the driven rod method had been generally employed, and if claimant concluded such method to be unreliable, it might have withheld its bid or made its own investigation in its own way.

There remains then of this item the claim that claimant encountered and excavated a large quantity of boulders, hard pan and quicksand and an old crib stone filled dam, when their presence was not noted on the plans, and when the presence of material easier and less expensive to excavate was noted on the plans, and the claim that the quantity of rock actually excavated exceeded considerably the quantity of rock indicated by the plans. It is claimed that the plans and the legends and notations thereon as to the materials to be excavated, as revealed by the soundings made by the state, constituted positive statements, representations and warranties, for the inaccuracy, misdescription and error of which the state is liable. In support of this contention, *Hollerbach* v. *United States,* 233 U. S. 165, and *Christie* v. *United States,* 237 id. 234, are cited.

There can be no recovery for this item for the

reason that claimant has expressly contracted that it would make no such claim.   The specifications provide " Excavation shall consist of the loosening, loading, transporting and depositing of *all* material, whether wet or dry, *of every name and nature* necessary to be removed."

Before inviting bids an estimate of the cost of the work was prepared by the state and submitted to bidders.   In this estimate there is no subdivision or classification of the excavation item.   The item reads: " 1,428,000 cu. yds. Excavation, Per Cu. Yd. 58 cts., $828,240."

In the information for proposers, submitted to claimant before bidding, were these provisions, viz.: " The estimate of quantities is to be accepted as approximate only, proposers being required to form their own judgment as to quantities and character of the work by personal examination upon the ground where the work is proposed to be done; and on the specifications and drawings relating thereto, or by such other means as they shall choose.

" The attention of persons intending to make proposals is specifically called to paragraph ten of the form of contract which debars a contractor from pleading misunderstanding or deception because of estimates of quantities, character, location or other information exhibited by the State."

Paragraph 10 of the formal contract provides : " The contractor agrees that he has satisfied himself by his own investigation and research regarding all the conditions affecting the work to be done and labor and material needed and that his conclusion to execute this contract is based on such investigation and research and not on the estimate of the quantities or other information prepared by the State Engineer, and that *he shall make no claim against the State*

*because any of the estimates, tests, or representations
of any kind* affecting the work made by any officer or
agent of the State may prove to be in any respect
erroneous.''

With these provisions of the contract and specifica-
tions before it and well understood, claimant agreed
to excavate all material, wet or dry, of every name and
nature, necessary to be removed for sixty-three and
eight-tenths cents per cubic yard, and it thereby
waived all right to make a claim for damages for any
misdescription of material as to either character or
quantity. Unless such is the meaning of the pro-
visions quoted from the information for proposers,
specifications and contract, it is difficult to discover
any reason for their use. The language is simple and
unequivocal and upon the facts of this case can have
no reference or application except to the information,
notations and legends appearing upon the plans.

The case differs from the *Hollerbach* and *Christie
Cases, supra,* in important particulars. Neither of
these cases considered the effect of contract provisions
similar to those involved here with reference to
erroneous entries, notations or data appearing on
contract plans. The *Hollerbach Case, supra,* involved
a contract for the construction of a dam, including
excavation. In the specifications this statement
appeared: '' The dam is now backed for about 50
feet with broken stone, sawdust, and sediment to a
height of within 2 or 3 feet of the crest.'' The
statement was not true. Instead of the stone, saw-
dust and sediment were found in the cribwork of an old
dam of solid logs filled with large stones. The
Supreme Court held that the positive and unequivocal
statement in the specifications as to the material back-
ing the dam constituted a warranty and relieved a
prospective bidder of the duty of investigating for

himself, and that its character as a warranty was not affected by general provisions in the specifications to the effect that quantities are approximate only and that bidders should inform themselves as to difficulties attending the execution of the contract, etc., and that a provision in the specifications, " It is understood and agreed that the *quantities* given are approximate only and that no claim shall be made * * * on account of any excess or deficiency, absolute or relative in the same " could not control the express warranty as to *character* of material at the particular location. In the instant case claimant has agreed that it has made its own investigation and research, that its conclusion to execute the contract is based on such investigation and research, and not on the estimate of quantities or other information prepared by the state engineer, and, in addition, that it will make no claim because any of the estimates, tests or *representations of any kind* made by the state may prove *in any way* erroneous. In the *Christie Case, supra,* a dredging contract was involved. The specifications provided: " The material to be excavated, *as far as known,* is shown by borings, drawings of which may be seen at this office, but bidders must inform and satisfy themselves as to the nature and material." These drawings showed gravel, sand and clay and no other materials. The findings of the trial court established the facts that the material to be excavated consisted largely of stumps, buried logs, cemented sand and gravel, whose presence had been discovered by the government boring parties, who in some instances noted the fact in their boring books, but in many instances when stumps and logs were encountered the boring apparatus was moved to other locations and the results of the boring at such other locations recorded as if taken where

staked out, and that the boring sheets referred to in the specifications contained only the record of completed borings and did not show any record of sunken logs, cemented sand and gravel or conglomerate impenetrable by the drill. The indications of buried logs were called to the attention of the resident engineer and he was asked if they should be noted on the record of borings, to which he replied that he did not consider them of enough importance to be noted. The specifications provided that bidders were expected to visit the place and make their own estimate of the facilities and difficulties attending the execution of the work, that *quantities* given were approximate only, and that it " must be understood that no claim shall be made against the United States on account of any excess or deficiency absolute or relative in the same." There was not in that case, as in this, any agreement that claimant had made its own investigations and had executed the contract relying solely thereon, nor was there any express agreement to make no claim because any *representation* of *any* kind might prove *in any respect* erroneous. The Supreme Court held that in the circumstances of that case there should be a recovery on account of the deceptive representations, and quite properly, of course. The conditions were represented " as far as known." This was equivalent to a warranty that they were known to be as represented. The conditions were in fact known and known to be different from those represented, and there was not, as here, any contract provision whose plain meaning relieved the government from the consequences of such misrepresentation.

In the instant case whatever of representation it may be said the notations on the plans accomplished was qualified by the specifications and expressly waived by the contract. The parties by their contract have

defined their rights and must be bound by such definition even though the result seem unjust. *O'Brien* v. *City of New York,* 139 N. Y. 543, 573; *Sundstrom* v. *State of New York,* 213 id. 68, 71; *Leary* v. *City of Watervliet,* 222 id. 337.

Claimant claims it had not sufficient time to make its own investigation as to the sub-surface materials to be excavated. The evidence is to the effect that claimant's representatives were investigating conditions on the site of this contract about one year before the date of the contract, and it cannot be held that there was not ample time to make the sufficient investigation which by the contract it has agreed it did make.

Moreover, claimant has failed to sustain the burden of establishing by a fair preponderance of the evidence that the plans, considered in connection with the plainly observable surface indications, did not fairly show the conditions actually encountered, and that the conditions encountered were more burdensome and expensive than those fairly indicated by the plans. There is some controversy concerning the amount of rock excavation indicated by the plans and the amount actually excavated. Witness Watt for claimant computes the former at 75,038 and admits it might be as much as four per cent greater or 78,039 cubic yards, while witness Belding for the state computes the same item at 77,425 cubic yards. Both figures are of course approximations and the variance in result is negligible in the circumstances of this case. Witness Watt for claimant computed the amount of rock actually excavated at 94,666 cubic yards, while Mr. Belding for the state computed the item at 78,664. The variance here is 16,002 cubic yards. This variance is accounted for, or at least rendered unimportant by the fact, testified to by claimant's witness Watt,

that about 17,000 cubic yards of the total quantity of 94,000 cubic yards of rock excavation were soft shale taken out by the dipper dredge without drilling and blasting and without being otherwise broken. It was, therefore, soft material in contracting parlance, and if deducted from the 94,000 cubic yards of rock claimed by claimant to have been excavated reduces that quantity to 77,666 cubic yards, in practical agreement with both claimant and the state as to the amount of rock excavation indicated by the plans. The evidence establishes the fact that much material consisting of large stones was excavated. No doubt much of this material would appropriately be classed as boulders, much as large stones and much as cobbles. The complaint is that, except for a short distance only cobbles were indicated on the plans. However, it is neither claimed nor proven that the sub-surface conditions were any different in this respect than the surface conditions which revealed the presence of boulders and large stone of varying dimensions in abundance throughout the site of the contract, and the undisputed evidence is that the presence of such material on the surface indicated a similar sub-surface condition. Moreover claimant's director and managing engineer, Japp, testified he would always expect to find boulders on top of rock, and the plans show the presence of rock throughout almost the entire length of the contract site.

Upon all the evidence I am forced to the conclusion that on examination of surface conditions upon the site of the contract, the bed of the river and the adjoining lands together with the notations on the plans showing location of rock and other materials penetrated by the sounding rod must have indicated with practical certainty that an abundance of boulders and other large stones would be encountered in excavating

below the bed of the river. That such was the expectation of the claimant is indicated by the fact that its plant was specially devised to deal with just such conditions. I cannot find that it was surprised and disappointed when it encountered them, or deceived by the plans with respect thereto. Witness Japp for claimant made a preliminary estimate of the cost of performing the contract based upon the conditions which he claimed were represented by the plans. His estimate of the cost of the work as exhibited by the plans without profit was forty-seven and seventy-seven one-hundredths cents per cubic yard. Witness Wells for the state fixed the fair and reasonable cost of the work under conditions actually encountered at fifty-six cents per cubic yard, including a profit of fifteen per cent, or forty-seven and six-tenths cents without profit. Witness Lane for the state fixed the cost under actual conditions at sixty cents with profit. Deducting an allowance of fifteen per cent from the Lane figure gives a cost without profit of fifty-one cents per cubic yard. The values of Messrs. Wells and Lane as to the fair and reasonable cost of performance of the work under the conditions actually encountered agree very closely with each other and with witness Japp's preliminary estimate of the cost based upon the information disclosed by the plans, and tend very strongly to confirm the conclusion that the plans were not deceptive, and further that the contract price, sixty-three and eight-tenths cents, was a remunerative one, and should have yielded all the profit anticipated by claimant when he entered into the contract.

It follows that the claim, as to item 9, should be dismissed.

Item 10, alleged in the 14th paragraph of the claim, is for increased cost of plant made necessary, as claimed, by the alleged misdescription of material to

be excavated and is for $144,130.98. Of course no recovery can be had for the increased cost of plant, as such. Claimant so conceded on the trial. If, however, there were to be a recovery on account of increased cost of performing the contract due to misrepresentation or breach of warranty (item 9), the increased cost of plant necessary to meet the misrepresented conditions would be an element to be considered in determining the amount of increased cost of performing the work, and not otherwise. As it has been held that there can be no recovery for item 9, item 10 must fall with it, and for the same reasons should be dismissed.

WEBB and CUNNINGHAM, JJ., concur.