PATRICK H. MURRAY, Claimant, *v.* THE STATE OF NEW YORK, Defendant.

(Claim No. 16130.)

Court of Claims, January 30, 1928.

State — claims against — Barge canal construction contract — change of line of sewer from bed of canal feeder to bank — fact that contractor encountered much more rock than was shown on plans does not warrant allowance where he was not deceived — claimant not entitled to allowance for expenses incurred in removing rock near water mains in manner other than by blasting — claim for extra back fill and for extra work occasioned by flood, dismissed.

Claimant, to whom was awarded a Barge canal construction contract, is not entitled to an allowance because, by reason of the changing of the line of the sewer from the bed of the canal feeder to the bank, he encountered much more rock than was shown by the plans, where it appears that he was thoroughly familiar with the locality, was not deceived, and had had forty years' experience as a contractor.

The claimant is not entitled to an allowance for expenses incurred in removing rock near water mains in a manner other than by blasting, where the city of Rochester and the State engineer deemed it unsafe to blast by reason of the proximity of water mains.

A claim for extra back fill is disallowed. A further claim for extra work occasioned by a flood must also be disallowed, since the claimant, by reason of his experience, had knowledge of conditions and should have provided against such a hazard.

CLAIM by contractor under a Barge canal construction contract.

*Horace G. Pierce* [*William F. Lynn* of counsel], for the claimant.

*Charles D. Newton, Attorney-General* [*Henry P. Nevins, Deputy Attorney-General,* of counsel]; *Carl Sherman* and *Albert Ottinger, Attorneys-General* [*Albert J. Danaher, Deputy Attorney-General,* of counsel], for the State of New York.

PARSONS, J. This claim arises out of a contract entered into by the claimant with the State known as " Erie Canal — Contract

No. 50-A — Section 9." It was for the construction of the sewer in aid of the Barge canal in and along what was known as the "Old Feeder" at or near Rochester, N. Y. The contract was entered into on or about July 3, 1916.

There had been prepared certain plans and specifications for the sewer prior to the advertisement for bids, which were open for inspection by any prospective bidder. The sewer was originally planned, and so appears upon the plans, to follow the bed of the feeder, and on such plans were the records of certain borings or tests made by the State or its agents as to the character of material to be encountered by the successful bidder in the course of the work. These borings or tests were made in the bed of the feeder and showed soft material with a certain quantity of rock. Prior to the bids being received, the plans were changed, and a portion of the sewer was taken out of the feeder and thrown along the bank. This change was made before the bids were received and was well known or could have been ascertained by any person desiring to bid on said contract. The claimant was the low bidder and the contract was awarded to him.

This claimant now makes a claim composed of several items. *First,* he claims that by reason of the changing of the line of the sewer from the bed of the feeder to the bank, he encountered much more rock than was shown on the plans and, therefore, the State made false representations which misled him. We will deal with this item first.

There were no borings or tests made after the change in the line of the sewer from the feeder bed to the bank and the contract contains what is known as paragraph 10 which reads as follows:

" The contractor agrees that he has satisfied himself by his own investigation and research regarding all the conditions affecting the work to be done and labor and material needed, and that his conclusion to execute this contract is based on such investigation and research, and not on the estimate of quantities or other information prepared by the State Engineer; and that he shall make no claim against the State because any of the estimates, tests or representations of any kind affecting the work, made by any officer or agent of the State may prove to be in any respect erroneous."

Any tests shown on the plans and specifications for rock were made on the opposite side of the feeder from that along which the sewer was constructed and the feeder was of considerable width.

This claimant was a contractor of some forty years of experience and testified he was perfectly competent to judge by examination the character of the various strata of the earth. He was particu-

larly familiar with this locality. This feeder was crossed by two large water mains supplying a large portion of the city of Rochester with water. It was also crossed by a bridge known as the Clarissa street bridge, the foundation of one end of which was in the bank of the feeder along which the sewer was to run. Now, this claimant laid at least one of these water mains and he built the Clarissa street bridge. Besides, he had laid water mains and sewers in that and other portions of the city of Rochester for forty years. He knew personally and of his own knowledge from experience what the character of this strata was. No map, specification, boring or test could change his personal knowledge gained from actual experience. The character of the strata that he was to encounter did not deceive this claimant. He knew. Then, again, as said above, no soundings were made by the State after the line of the sewer was changed before the bidding. He was not deceived. The State suppressed no information it had. (*Pearson & Son, Inc.,* v. *State,* 112 Misc. 29, 39.) This instant case differs therein from the *Jackson* case and the *Stewart* case, where the State actually suppressed or failed to disclose information that it actually had or was in possession of as to the character of the strata that was to be excavated, with intent to mislead and deceive, and the court held in those cases that such a suppression was a fraud upon the contractor. Not so in this case, and in that respect it differs materially from either the *Jackson* or *Stewart* case. (*Jackson* v. *State,* 210 App. Div. 115; affd., 241 N. Y. 563; *Stewart & Co., Inc.,* v. *State,* 121 Misc. 827; affd., 218 App. Div. 810; affd., 245 N. Y. 638.)

The bank of the feeder was dry, perfectly accessible to a prospective bidder, and this claimant by reason of his superior knowledge gained by forty years' experience in and about Rochester, and especially gained by the laying of the water main and the building of the bridge on the immediate site of his work, could know by the most casual inspection what he was to encounter in carrying out his contract. It might also be said that he needed no inspection. He knew in his own mind. We do not think he is entitled to any allowance because of rock excavation because of there being more rock than might have been estimated by the engineer.

The contract also contained this provision as to excavations near water mains: " The contractor will be required to exercise particular care to prevent the displacement of, or injury to, any of the water works, stop gates, water service boxes, or other water works construction, gas mains, gas services, electric systems, sewers, or other underground systems that may be exposed by the trenching."

The authorities of the city of Rochester protested against blasting

within ten feet on either side of these mains, as a breaking of one or both of these mains would result in serious consequences to the city of Rochester and to the work of the contractor. Therefore, the authorities of the city of Rochester and the State Engineer deemed that it was unsafe to blast within ten feet on either side of these water mains and forbade the contractor from removing the rock by blasting and required the same to be taken out in another manner. We think this was a reasonable regulation and no extras should be allowed for the expense of removing the rock near these water mains. While the contractor thinks that he might have blasted somewhat closer, the contract has the usual provision that is found in all of these contracts that the State Engineer is the final arbiter of such questions, and the State Engineer notified the contractor as to the blasting. We think no extras should be allowed for that.

The other items of the claim are all bound up in extra work caused by a flood and extra back fill.

It does not appear to us that there was any extra back fill as it is testified that considerable of the material excavated was left upon the bank and not used at all, and, of course, to back fill, the back fill is made by the material being excavated ahead.

Now, we come to the flood. This claimant for many years had always lived in and about Rochester and was as familiar with the characteristics of the Genesee river as any small boy is with the " Old swimming hole." He knew that with heavy rain and especially during spring freshets, it would overflow. He knew that feeder gates formerly had been maintained by the State to control the water of the Genesee river in connection with the old canal. He knew, or could have ascertained by the most casual inspection, that the bank between the " Old Feeder " and the canal had been washed out in certain places to almost a level with the bottom of the feeder, and knew that in case of a flood, water would come through the break in the bank of the feeder (and the whole feeder was on the site of the claimant's work), and nothing was done to prevent this. It is a fair inference to say that if the so-called bulkhead in the Lehigh Valley crossing had never been disturbed, the water would have come in just the same. It is really more than an inference. It is almost a conclusion.

The contract provided that the claimant should keep the site of the work so that the sewer pipes should be laid in the dry. He knew that the Genesee river might flood him. Therefore, it was a hazard of the contract and he should have provided for it. He attempts to excuse this because he says the State removed some logs or sticks that formed a sort of bulkhead in the Lehigh Valley

Surrogate's Court, Clinton County, February, 1928.        [Vol. 131

crossing.   At best they were only loose logs or sticks and, there-
fore, offered very little protection.   They were loose and water
could come through or go over them in case of high water.   There
is no reliable proof that the sticks were removed by the State.   It
is true, certain witnesses testified that they found similar sticks
in the State yard but they were sticks that could fit any bulkhead
as these bulkheads simply consisted of slots in the concrete abut-
ments into which these sticks were dropped.   To our minds, the
water from the Genesee river flood which washed the silt and mud
on the site of the work largely, if not wholly, came through the
break in the feeder bank which the claimant had neglected to take
care of and chose rather to take his chances, and the State ought
not to be held liable therefor, as we believe, as stated above, that
the liability of flooding from the Genesee river was a hazard to
this contract and that it was well known to this claimant before
he ever entered upon the contract.

We, therefore, believe that this claimant has not brought himself
within the doctrine of knowingly making false representations as
laid down in the *Jackson* and *Stewart* cases, and, therefore, is not
entitled to recover.

We, therefore, believe that the claim should be dismissed on
the merits.

POTTER, J., concurs.