JOHN H. GORDON, Respondent, v. THE STATE OF NEW YORK, Appellant.

Constitutional law — State Constitution (Art. 3, § 28) prohibiting legislature and other legislative bodies from granting extra compensation to public officers, servants, agents and contractors — invalidity of chapter 459 of Laws of 1919, authorizing Court of Claims to hear and determine claims of highway contractors and make awards for increased costs of highways constructed since beginning of late war.

1. By the State Constitution (Art. 3, § 28) which provides that " The legislature shall not, nor shall the common council of any city, nor any board of supervisors, grant any extra compensation to any public officer, servant, agent or contractor," the legislature is inhibited from appropriating any money based upon gratitude and charity so far as its officers, servants, agents and contractors are concerned. The legislature, thus prohibited from recognizing claims founded on gratitude and charity, is powerless to indirectly provide a means of determining such claims, provide for the entry of judgment thereon against the state and to subsequently appropriate moneys to pay the judgment.

2. Chapter 459 of the Laws of 1919 which authorizes the termination of certain contracts for the construction of state highways, called " war contracts," entered into before April 6, 1917, the date of the declaration of war between the United States of America and the Imperial German Government, and confers jurisdiction upon the Court of Claims to hear and determine claims and make awards for increased costs incurred in the completion of such contracts, is

invalid in its entirety for the reason that its purpose and effect is to grant to contractors extra compensation and is, therefore, within the prohibition of the Constitution (Art. 3, § 28). The fact that the Court of Claims is authorized to hear and determine such claims does not render the statute valid. Payment of judgments rendered by that court are provided for by appropriation of the funds of the state and a judgment in favor of a claimant for increased cost of labor and material in excess of the amount to be paid in such a contract would clearly fall within the term " extra compensation."

*Gordon* v. *State of New York*, 196 App. Div. 589, reversed.

(Argued January 12, 1922; decided February 28, 1922.)

APPEAL from an order of the Appellate Division of the Supreme Court in the fourth judicial department, entered July 1, 1921, which reversed a judgment of the Court of Claims dismissing the claim of the plaintiff herein and granted a new trial.

*Charles D. Newton, Attorney-General (Arthur E. Rose* of counsel), for appellant. It appears from an analysis of chapter 459 of the Laws of 1919 that the legislature made a direct grant of certain moneys to contractors and merely delegated the Court of Claims to compute the amount to which each contractor was entitled. This is a direct violation of section 19 of article 3 of the State Constitution. (*Cayuga County* v. *State*, 153 N. Y. 279.) The act is in contravention of the prohibition contained in section 28 of article 3 of the Constitution of the state of New York. (*Town of Guilford* v. *Supervisors of Chenango Co.*, 13 N. Y. 149; *Matter of Mahon* v. *State*, 171 N. Y. 263; *Porter* v. *Fletcher*, 153 App. Div. 470; *Dale Eng. Co.* v. *State*, 114 Misc. Rep. 243; *People* v. *W. C. Nat. Bank*, 231 N. Y. 465.) No moral obligation in the legal meaning of that term rested upon the state to make extra compensation to these highway contractors. (*Chapman* v. *City of New York*, 168 N. Y. 80; *Cole* v. *State of New York*, 102 N. Y. 48; *W. I. Bridge Co.* v. *Town of Attica*, 119 N. Y. 204; *Monroe* v. *State*, 223

N. Y. 208; *Columbus R., P. & L. Co.* v. *City of Columbus,*
249 U. S. 399; *Boret* v. *Vogelstein & Co.,* 188 App. Div.
611; *Town of North Hempstead* v. *Public Corp.,* 107
Misc. Rep. 19; *Lenawee Co. Gas & El. Co.* v. *Adrian,*
176 N. W. Rep. 590.)

*B. P. Wheat* and *E. R. Shepard* for respondent. The
claim for the increased cost of performance of the contract
as a result of the war is founded upon a legal consideration.
(*Hamer* v. *Sidway,* 124 N. Y. 538; *Street* v. *Galt,* 136 App.
Div. 724; 202 N. Y. 575.) Respondent's claim is also
founded upon a moral or equitable consideration which
is sufficient to sustain the validity of the statute. (*Coxe*
v. *State,* 144 N. Y. 396; *Wheeler* v. *State,* 190 N. Y. 406;
*Munro* v. *State,* 223 N. Y. 208; *Adams* v. *City of Shelby-
ville,* 154 Ind. 467; *Mayor, etc.,* v. *Murchie,* 3 Munf.
358; *Babcock* v. *Wolf,* 70 Iowa, 676; *People ex rel. Mayor*
v. *Nichols,* 79 N. Y. 582; *People ex rel. Keech* v. *Thompson,*
94 N. Y. 451; *McArthur Bros.* v. *Commonwealth,* 197
Mass. 140; *L. Bridge Co.* v. *Union Co.,* 232 Penn. St.
255; *People ex rel. Cotte* v. *Gilbert,* 226 N. Y. 103; *Matter
of Watson,* 226 N. Y. 384; *People* v. *Clark,* 139 N. Y.
687; *People* v. *Lochner,* 177 N. Y. 145.)

HOGAN, J. November 10, 1915, the claimant, respond-
ent, entered into a contract with the state of New York,
through the commissioner of highways, for improving
the Fleming-Scipio, part 2, county highway, number 1307,
6.06 miles, in the county of Cayuga. The contract
provided that the material and work therein specified
was to be furnished and performed by the claimant for
which claimant was to be paid unit prices stated therein.
The work contracted for was to be completed on the 15th
day of November, 1916.

Chapter 459 of the Laws of 1919, entitled " An act
authorizing the termination of certain highway contracts,
conferring jurisdiction upon the court of claims to hear

and determine claims and make awards for increased costs incurred in war contracts, and making an appropriation for the completion of unfinished work," became a law May 7, 1919.

By section 1 of the act "war contracts" were designated as those which were made and executed prior to the 6th day of April, 1917, the date of the declaration of war between the United States of America and the Imperial German Government.

Section 2 authorized and directed the state commissioner of highways to enter an official order terminating any war contract and releasing the contractor and the surety on the bond accompanying such contract from any further obligation or responsibility thereunder, provided that such contractor shall not have violated the contract prior to April 6th, 1917, by unreasonable delay in its performance or other substantial breach of the provisions thereof, other than the failure to complete the same.

By section 3 the commissioner of highways was required to prepare a final account of all labor performed and materials furnished by the contractor at the contract unit prices therefor, and after deducting all previous payments made, pay the balance remaining to the contractor.

Section 5 provided a contract thus terminated was required to be completed under the direction and supervision of the state commissioner of highways by a contract awarded after competitive bidding.

Section 6 of the act conferred upon the Court of Claims jurisdiction to hear all claims for alleged increase in the costs of labor, materials, or the transportation of material, incurred after April 6, 1917, in the doing and performance of war contracts which had been completed, accepted, and for which final payment had been made, and also any war contract terminated under the provisions of the act, and authorized the court to determine the increased cost, whether the whole or a part, which is properly chargeable against the state, and render judgment against

the state for the amount so determined as chargeable
against the state, which judgment shall be paid as other
judgments against the state are paid, no judgment,
however, to be rendered for an amount greater than
thirty-five per cent of the contract price of labor, materials
and the transportation of materials furnished or supplied
during the year 1917, nor greater than fifty per cent of
the same supplied, etc., during the year 1918.

Pursuant to the provisions of this chapter, the claimant
filed a claim against the state wherein he asserted that
the time for the completion of the contract was extended
by law either expressly or by implication until about
June 12, 1919, at which time the commissioner of highways
entered an official order terminating said contract and
released the claimant and the surety on his bond accom-
panying said contract from further obligation or responsi-
bility thereunder and further alleged that the actual
increased cost to him under said contract brought about
by reason of the increased prices of labor, materials and
transportation of materials in the work of constructing
the highway subsequent to April 6, 1917, and during
said year was the sum of $10,139.99, for which amount
he prayed judgment against the state.

Upon the hearing before the Court of Claims, the
attorney-general moved that the claim be dismissed on
the ground that the statute of 1919 was in contravention
of enumerated provisions of the Constitution. The
counsel for the claimant practically conceded that the
claim filed was predicated upon and presented under the
provisions of the act of 1919 and based upon that statute.
The motion of the attorney-general was granted and the
claim dismissed. The Appellate Division reversed the
determination and granted a new trial.

The conclusion of the Appellate Division is tersely
stated in the opinion as follows: " We do not pass upon
the constitutionality of the act, (1919) so far as it relates
to claims arising under completed contracts. The deter-

mination of that question is not necessary. We hold that the act, so far as it related to claims terminated under the provisions of the act, is constitutional, and that the act authorizes the Court of Claims to audit and allow the same." In the course of the opinion the court holds that, while the legislature may not recognize claims founded upon gratitude or charity, it may recognize claims founded in equity and justice, and in the enactment of the statute in question the legislature recognized the claim in this case as one founded in equity and justice and the claim is not only a moral obligation against the state but a legal claim as well, founded as it is upon the cancellation of the contract and the release and waiver of the contractor and his surety.

The contract of November 10, 1915, between claimant and the state was executed after claimant in competition with other contractors had submitted a proposal for a performance of the work therein specified to be performed and the labor and material necessary to complete the same. Claimant was a contractor and familiar with the nature of the work to be performed, the cost of labor and materials necessary to complete the specified work and the time within which the same could be completed. Engaged in a hazardous business, claimant was chargeable with knowledge of the legal obligation imposed upon a party to a contract to perform his covenants and liability to respond in damages in the event of non-performance, and that a like obligation rested upon the state. We may also attribute to claimant as a business man and contractor knowledge of the increasing abnormal conditions existing at the time of the execution of the contract. The powers of Europe had for some time prior to November 10, 1915, been and were then engaged in war. Some five months previous the aggressor had ruthlessly caused the death of American citizens and helpless children upon the high sea and the fact was apparent that the United States could not in the interest

of humanity and as a measure of self protection long delay participation in the war in aid of the forces opposed to the aggressor.  A continuance of the war and particularly the entry of this country into the conflict would necessarily result in scarcity of labor, increased cost of the same and increased cost of material with continued business depression.  Confronted with that condition and outlook, claimant proposed to undertake the work under the contract.  To say that he did not appreciate the risk and that his proposal to perform the work was not made in contemplation of the abnormal conditions then extant and danger of an increase of the same would be a serious reflection upon his sagacity as a business man.  The unit prices to be paid by the state for labor and material were fixed by claimant in his proposal.  As a contractor he was aware of the prevailing cost of labor and materials and was qualified to anticipate the conditions likely to arise during the term of the contract.  At least he undertook and was willing to do so and to give a bond to secure performance on his part.  Having entered into the contract, claimant became legally and equitably bound to discharge the obligation assumed by him, however onerous the burden.  (*Boret* v. *Vogelstein & Co., Inc.*, 188 App. Div. 605, 611; *Columbus R., P. & L. Co.* v. *City of Columbus*, 249 U. S. 399.)  Failure or refusal on the part of the claimant to perform the contract would vest in the state a cause of action for damages against him, and to such action a defense that by reason of war conditions the cost of labor and materials had increased, rendering the contract a loss to him, would be unavailing.

The Appellate Division in the opinion there delivered said that the legislature in the enactment of the statute of 1919 recognized claims of the character of the one in the instant case as founded in equity and justice and the claim is not only a moral obligation against the state but a legal claim as well.  Liability of the state based upon equity and justice and by reason of a moral obligation

has been frequently urged in this court and thus far claimant has succeeded by reason of the application of such terms. Equity and justice recognize the inviolability of contracts, protect and enforce the rights of parties thereunder, inhibit an unlawful abrogation of the same, award damages arising from a breach thereof and likewise decree specific performance of contracts. Equity and justice do not require the state to reimburse a contractor for the increased expense incurred by him in the performance of a contract due in no measure to the act of the state. The claimant assumed the risk incident to the performance of his contract. Had the cost of labor and materials decreased rather than increased, the state under the contract would still be obligated to pay the unit prices it covenanted to pay, and equity and justice would turn a deaf ear to a suggestion by the state that the expense to claimant had been materially reduced, his anticipated profits thereby largely increased, and, therefore, a moral obligation existed upon his part to reduce the cost to the state.

The state did not undertake to indemnify claimant against loss upon his contract. On the contrary, it required him to give a bond for a strict compliance on his part with the terms of the same. War conditions and the increased cost of labor and materials or scarcity of labor were not precipitated by the state or due to any act upon its part. So far as the record discloses, the state performed every obligation resting upon it under the contract. The contract between the claimant and the state was purely a business transaction akin to contracts between individuals. Undoubtedly claimant anticipated a profit would result from his contract. If disappointed and a loss resulted, he assumed the risk of such loss and to bear the same. A contribution to him and other contractors similarly situated by the taxpayers of the state under the statute of 1919 or in whatever form framed would operate as a dispensation of charity.

A review of the decisions of this court wherein the phrase " moral obligation " has been considered, and comment thereon as distinguished from the case at bar would extend this opinion at too great length. We have recently referred to the subject and called attention to the limited application of the same. (*People* v. *Westchester County National Bank*, 231 N. Y. 465.) The application of a " moral obligation " has never been applied to the state by this court in a case like the one under consideration.

The Appellate Division did not pass upon the constitutionality of the statute of 1919 so far as completed contracts were concerned, but held the statute valid as to contracts canceled thereunder where the claimant and his surety executed a release and waiver of claims against the state. As to the surety no claim existed in its favor against the state. No claim has been filed by it. A release by the surety of uncollected premiums on claimant's bond inured to the benefit of claimant. If the statute is invalid the releases would necessarily be without consideration. So far as the record in this case discloses the claimant did not have a valid claim against the state which could be the subject of a release.

In my opinion the statute, chapter 459, Laws of 1919, is invalid in its entirety for the reason that its purpose and effect is to grant to contractors extra compensation.

Prior to 1875, the Constitution of the state did not prohibit the legislature from making a grant of extra compensation to contractors. (*Town of Guilford* v. *Board of Supervisors of Chenango County*, 13 N. Y. 143; *People* v. *Densmore*, 1 Thompson & Cook, 280.)

In the proposed Constitution of 1867, a section was embodied (section 17, article 3) which provided so far as material here: " The legislature shall not grant any extra compensation to any public officer, servant or contractor," and by section 8 of article 7 of the same proposed Constitution, the restriction on the power of

the legislature contained in section 17, article 3, was extended to common councils of cities and boards of supervisors of counties. The proposed Constitution of 1867 was rejected by the people with the exception of the judiciary article.

Pursuant to a recommendation made by Governor Hoffman in his message to the legislature of 1872 a constitutional commission was created. In the course of his message, the governor said: "There should be more specific constitutional restraints upon legislative awards to any public officer, servant, agent or contractor." The commission created in 1872 reported to the legislature certain proposed constitutional amendments, which, after due action thereon on the part of the legislature, were ratified by the people at a general election in 1874 and became effective January 1, 1875.

One of the amendments adopted under a different numbering was section 28 of article 3 as it exists to-day, and reads as follows: "The legislature shall not, nor shall the common council of any city, nor any board of supervisors, grant any extra compensation to any public officer, servant, agent or contractor."

By the adoption of that provision of the Constitution, the legislature was thereafter inhibited from appropriating money based upon gratitude and charity so far as its officers, servants, agents and contractors were concerned.

In discussing the effect of the section of the Constitution quoted, amongst others, Judge MARTIN, writing for this court in Stemmler v. Mayor, etc., of N. Y. (179 N. Y. 473) said: "Since those amendments to the Constitution, their effect has often been the subject of judicial construction by this and other courts in the state. Although we are not unmindful of the decisions of this court anterior to their adoption, and realize that the broad doctrine was then held that the legislature was not confined in its appropriation of public money, or of sums to be raised by taxation in favor of individuals, to cases where a legal demand

existed, and that it could thus recognize claims founded upon equity and justice, yet, since the amendments, that rule has been changed, and they have eliminated all considerations of gratitude and charity as grounds for the appropriation of public money, except for the aid and support of the poor." (p. 483.)

The construction thus placed upon the section of the Constitution has not been departed from or modified. The legislature thus prohibited from recognizing claims founded on gratitude and charity was powerless to indirectly provide a means of determining such claims, provide for the entry of judgment thereon against the state and to subsequently appropriate moneys to pay the judgment.

The statute of 1919 in effect and substance provides for the payment of compensation to contractors over and above that fixed by contract when the services were rendered and, therefore, a grant of extra compensation within the prohibition of the Constitution. The fact that the Court of Claims was authorized to hear and determine the claim does not render the statute valid. Payment of judgments rendered by that court is provided for by appropriation of the funds of the state and a judgment in favor of claimant in this case for increased cost of labor and material in excess of the amount specified to be paid in the contract would clearly fall within the term " extra compensation."

The order of the Appellate Division should be reversed and the order and judgment of the Court of Claims reinstated, with costs in this court and the Appellate Division.

HISCOCK, Ch. J., POUND, McLAUGHLIN, CRANE and ANDREWS, JJ., concur with HOGAN, J.; CARDOZO, J., concurs in result upon the ground that the statute (L. 1919, ch. 459) involves a violation of article III, section 28, of the Constitution of the state.

Ordered accordingly.