In the Matter of the Application of RALPH S. KEEP and Others to Set Aside an Assessment in the Matter of a Drain in Lincoln Avenue in the City of Lockport, New York.

Supreme Court, Niagara County, October 23, 1930.

*William W. Storrs,* for the appellants.

*George C. Lewis, Corporation Counsel,* for the city of Lockport, respondent.

*Howard H. Moyer,* commissioner of assessment and taxation, appearing in person.

CHARLES B. WHEELER, Official Referee. The charter of the city of Lockport (Laws of 1911, chap. 870) provides for an appeal to the Supreme Court by aggrieved parties from an assessment levied on their property by officials of the city. It reads:

" § 246. Appeals to county and supreme courts. An appeal may be taken within twenty days from the time of the first publication of every ordinance directing any local improvement, to the county court of the county of Niagara; and in case the county judge of said county shall be interested in any such local improvement, he shall certify such appeal to the supreme court of the judicial district in which said city is located. An appeal may in like manner be taken to said county court or supreme court from any local assessment and the order confirming the same, within twenty days from the confirmation of such assessment."

Pursuant to this authority Mr. Keep and his twenty-eight associate appellants appealed to this court from an assessment levied for the cost of the construction of a public drain or sewer with water pipes laid in Lincoln avenue in Lockport.

By an order of this court the matter was referred to this referee to hear and determine the issues raised. The appeal is " from an ordinance and resolution adopted by the City of Lockport, N. Y., September 9th, 1929, confirming Local Assessment No. 927 for a drain and water pipe in Lincoln Avenue and South Transit Street, and from said assesssment."

The steps looking to the construction of the drain or sewer were initiated by a petition to the common council by certain property owners. The construction of the drain was ordered, and plans and specifications prepared, and bids invited for doing the work.

The contract for its construction was awarded to the firm of Bird & Street Construction Company, that concern being the lowest bidder, and that concern entered into a written contract for doing the work for $95,521. The contractor entered upon the construction of the drain and the laying of the water pipe called for by its contract. It is claimed in doing the work the contractor

ran into rock where it expected to find earth or sand. Building the drain through rock increased the cost to it of construction.

Prior to this the city had issued its certificates of indebtedness to meet the cost of the work. However, on October 15, 1928, the matter was called to the attention of the common council of the city, and a resolution was offered and passed by that body reciting that " an unexpected expense not contemplated at the time of signing of the contract or the issuance of the certificate had been incurred, by reason of rock excavation that additional money will be required for this unexpected expense not contemplated or anticipated at the time of such signing of contract and issuance of certificate, and that the estimated 95% of expense will amount to $79,880.00 as now estimated by the City Engineer." The resolution then directed the city to borrow sufficient funds to pay the prior certificate and the " additional cost of rock excavation " to wit, issue new certificate for such purposes in the amount of $174,495.32. This was done, but it will be here noted that the cots of the drain or sewer was practically doubled.

The contractor proceeded and completed the drain or sewer and was paid the increased amount. After the drain or sewer was completed an assessment for the increased amount was ordered against the properties benefited by the improvement. The assessment was prepared and made by the commissioner of assessment and taxation, and reported to the common council which by ordinance and resolution adopted September 9, 1929, confirmed said assessment.

Thereupon these appellants or relators appealed from said ordinance and assessment to this court alleging various grounds on which it is claimed said assessment is illegal and void and should be set aside. Among the grounds alleged is the allegation and claim that the city had no right or authority to vary the terms of the contract and to pay the contractor the additional amount allowed and paid it for rock excavation.

The important question presented by this appeal is whether the council of the city of Lockport had the right or authority to increase the compensation of the contractor for building the sewer in Lincoln avenue from the agreed price of $95,521 by adding thereto any further sum by reason of the rock tunnel work done in the construction of the sewer. In and by the contract the Bird & Street Brothers Construction Company undertook to construct " a drain and waterpipe in Lincoln Avenue according to plans and specification hereto annexed and made a part hereof, and to furnish all the material and perform all the work necessary to fully complete the said work or improvement."

For this the contractor was to be paid the sum of $95,521 in the manner set forth in the contract.

The referee is of the opinion it will not be out of place to set forth in full the various clauses of the contract and specifications having a bearing on the duties and obligations of the contractor and city, bearing in mind the specifications for doing the work are incorporated into and form a part of the contract between the parties.

" 1. In consideration of the sum of One Dollar ($1.00), paid by the City, the receipt whereof is hereby acknowledged, and in consideration also of the agreement and covenant of the city to pay to the Contractor, as hereinafter mentioned, the Contractor hereby covenants and agrees with the City to construct a drain and water pipe in Lincoln Avenue, according to the plans and specifications hereto annexed and made a part hereof and to furnish all the material and perform all the work necessary to fully complete the said work or improvement.

" 2. Consideration. In consideration of the faithful performance of this contract, by the Contractor, the City hereby covenants and agrees to pay to the Contractor, the sum of Ninety-five Thousand Five Hundred twenty-one 00/100 Dollars ($95,521.00), for the full and entire completion of this contract; payments to be made as follows: In monthly payments, not exceeding 90% of monthly estimates certified in writing, by the City Engineer to the Common Council of the total amount of work done and materials actually put in place or delivered on the site of the work, in accordance with said specifications, provided such monthly estimate shall amount to One Thousand Dollars ($1000.00) or more; the final estimate to be made and certified to the Common Council by the Engineer within thirty days after the completion of the work and the balance of said consideration remaining unpaid less five per cent of the total cost of construction shall thereupon be paid by the City to the Contractor. The remaining five per cent of the total cost of construction shall be retained by the City for the period of nine months from the time of the completion of said work as guarantee against imperfect work performed under this contract."

" 5. Quantities of material,— completed to satisfaction of engineer. The Contractor admits and agrees that the amounts and quantities of material to be furnished, and the work to be done and mentioned in the notices and other papers on which proposals were invited and made, are approximate only, and that he is satisfied therewith in executing this contract; and he agrees that he will not at any time dispute or complain that there was any misunderstanding or any error in regard to the amounts and quantities

of material to be furnished, and of work to be done under this contract, or in regard to the amount of compensation to be paid therefor, and he further covenants and agrees to completely execute and perform this contract, and to fully complete the said work or improvement to the satisfaction of the City Engineer, and in strict compliance with the said plans, specifications and profile and with the terms of this contract; and not to ask, demand, sue for, or recover any further or extra compensation beyond the contract price, it being and intended that the said price shall be the sole and only compensation to the Contractor for the full performance of this contract, and the entire completion of said work or improvement. It is further agreed and understood that the price to be paid includes payment for labor.

" 6. Sources of Information. The Contractor further agrees that he is fully informed regarding all of the conditions affecting the work to be done and labor and materials to be furnished for the completion of this contract, and that his information was secured by personal investigation and research and not from the estimate of the Engineer; and that he will make no claim against the City by reason of estimates, tests or representations of any officers or agent of the City."

" 13. Specifications, contract, variance. It is mutually under- stood and agreed that the plans, specifications, profile and the drawings hereinbefore referred to, and each of them, shall have the same force and effect to all intents and purposes as if incorporated in this contract, fully and at length; and the Contractor agrees to comply therewith, and be bound thereby, and to furnish all the material and perform all the work to fully complete the work or improvement therein contemplated; and in case there are any variations between the terms of this contract and such plans and specifications or drawings or between any of them, the City Engineer shall determine which shall control, and his decision shall be final, binding and conclusive upon the parties."

" 17. Decision of Corporation Counsel and Engineer to be final. It is also mutually understood and agreed that except as herein otherwise expressly provided, all questions, differences or controversies which may arise between the City and the Contractor, in reference to the drawings, or in reference to the true intent and meaning of any of the provisions or stipulations contained in the contract or specifications shall be decided by the City Engineer and Corporation Counsel, and the decision of the City Engineer and Corporation Counsel shall be final, binding and conclusive upon both parties hereto.

" 18. Changes in contract — unit prices. The City reserves the

right to make such additions, deductions or changes as it deems necessary, making an allowance or deduction therefor, at the prices named in the itemized proposal entitled ' unit prices,' attached to the proposal of said Contractor and hereto annexed and made a part thereof, and this contract shall in no way be invalidated thereby; and no claim shall be made by the Contractor for any loss of anticipated profits because of any such change or by reason of any variation between the approximate quantities and the quantities of the work done. It is further agreed that any increase or decrease of quantities or extra work performed, or materials furnished, shall be at the prices mentioned in said ' unit prices.'

" 19. Changes in Contract Unit Prices. The specifications, maps, plans and drawings or the prints referred to herein shall be considered the ground and data upon which the contract is based and shall form a part of said contract and the City reserves the right to make such additions, deductions or changes as it deems necessary, making allowance or deductions therefor, at the prices named in the itemized proposal entitled ' unit prices,' attached to the proposal of said Contractor, and hereto annexed and made a part hereof, and his contract shall in no way be invalidated thereby; and no claim shall be made by the Contractor for any loss of anticipated profits because of any such change or by reason of any variations between the approximate quantities and the quantities of work done. It is further agreed that any increase or decrease in quantities or extra work performed or materials furnished, shall be at the prices mentioned in said ' unit prices.'

" 20. Authority for Extras. No allowance shall be made to the Contractor for extra work, unless he has a written order from the Engineer, authorizing such extra work, and unless the same together with the prices therefor are approved by the Engineer and the Common Council and in every case where such extra work should be concealed from view when completed, it shall be measured at the time of excavation by the Engineer or his deputy, and the Contractor shall give the Engineer time or notice to enable him to see such work before it is concealed from view."

Section 17 of the specifications provides: " Sec. 17. Tunnelling will not be allowed without the approval of the Engineer, and the method of tunnelling shall be subject to his approval."

The referee is unable to discover that the plans for the sewer and water pipes were in any way changed or modified. It is probably true that it was discovered as the work progressed that a greater quantity of rock was encountered than was originally anticipated, and it became advisable to tunnel this rock rather than to excavate down from the surface.

But such a possible condition appears to have been in the minds of the contracting parties, for section 17 of the specifications expressly provides: " Tunnelling will not be allowed without the approval of the Engineer, and the method of tunnelling shall be subject to his approval." In other words, though rock was encountered in the progress of the work, the contractor was not at liberty to tunnel without the consent and approval of the engineer. It will be noted that when tunnelling is permitted there is nothing in the agreement or specifications to the effect that such tunnelling should be regarded or treated as extra work, or any departure from the plans and specifications.

Clause 6 of the specifications expressly provides:

" Sources of Information. The Contractor further agrees that he is fully informed regarding all of the conditions affecting the work to be done and labor and materials to be furnished for the completion of this contract, and that his information was secured by personal investigation and research and not from the estimate of the Engineer; and that he will make no claim against the City by reason of estimates, tests or representations of any officers or agent of the City."

No misrepresentations of any kind are claimed or shown to have been made by the officials of the city as to the character or extent of the work to be done covered by the contract made by the contractor with the city.

It is undoubtedly true that the construction of the drain or sewer involved the removal of more rock than was anticipated by either the contractor or the city officials. The drawings prepared by the city engineer give a profile of the surface of the territory through which the drain was to run. It also delineates the sewer or drain to be built, and shows its depth at various points below the surface of the ground. This profile drawing, however, nowhere shows or indicates the nature or character of the ground below the surface. It does not purport to show whether in going down to the required depth of the drain dirt or rock would be encountered. These things could only have been learned in advance by borings or test holes sunk for the purpose of ascertaining what lay beneath the surface. That rock might be expected is clearly indicated by the very terms of the contract for the contract expressly provides that no tunnelling shall be done without the consent of the city engineer. In other words, the engineer might insist that the work, even through rock, be done by open cut. The fact that tunnelling through rock was permitted indicates that the contractor preferred this method as the cheaper way of doing what he had agreed to do.

This clause quoted casts the burden on the contractor of ascer-

taining for himself just the conditions to be encountered in the building of the drain or sewer. These things could be readily ascertained by test pits or drilling, and if he failed to ascertain the conditions to be met he was not permitted to make any claims against the city by reason of such unexpected conditions, or " by reason of estimates, tests or representations of any officer or agent of the City."

If unexpected conditions developed in the progress of the work the contractor took the chances and perils, and would have to stand the extra cost; and expressly waived any claim against the city incident thereto.

The referee, therefore, interpreting the contract finds that the contractor was legally bound to build the drain in question for the price stipulated notwithstanding in doing this he encountered anticipated rock through which it had to go.

However, it appears the council of the city did allow and pay the contractor the additional compensation owing to the tunnel work done through the rock.

This amount it appears was computed on the basis of the unit prices attached to the specifications. However, these unit prices applied only to extra work done outside of that called for by the original contract.

This is provided for by clause 19 of the specifications, and when read will be seen to apply only to extras and deductions by a change or modifications of the plans and specifications under which the contract was made.

This clause reads:

" Changes in Contract Unit Prices. The Specifications, maps, plans and drawings or the prints referred to herein shall be considered the ground and data upon which the contract is based and shall form a part of said contract and the City reserves the *right to make such additions, deductions or changes as it deems necessary, making allowance or deductions therefor, at the prices named in the itemized proposal entitled ' unit prices,'* attached to the proposal of said Contractor, and hereto annexed and made a part hereof, and his contract shall in no way be invalidated hereby; and no claim shall be made by the contractor for any loss of anticipated profits because of any such change or by reason of any variations between the appropriate quantities and the quantities of work done. It is further agreed that any increase or decrease in quantities or extra work performed or materials furnished, shall be at the prices mentioned in said ' Unit prices.' "

We, therefore, find and hold that the city not only had the right, but it was its duty to hold the contractor to a strict perform-

ance of its contract without paying any additional money for building the sewer, and that the city authorities had no right to increase the contractor's compensation for doing the work by reason of any hardship or extra cost incident thereto.

This view of the referee is, we believe. fully sustained by numerous well-considered decisions.

In *Leary* v. *City of Watervliet* (222 N. Y. 337), involving a contract for the construction of sewer conduits, storm drains and appurtenances thereof for a city, the contractors sought to recover, *inter alia*, damages for removal of 1,652 cubic yards of rock alleged to be in excess of the requirements of the contract. Recovery was had in the lower courts but was denied in the Court of Appeals.

There are many similar provisions in the two contracts, making this case quite in point. For convenience we make rather liberal extracts from it.

" In 1913 the city of Watervliet by its sewer commission, appointed pursuant to chapter 457 of the Laws of 1911, advertised for sealed proposals for the completion of two dams, conduits, storm drains and appurtenances pursuant to plans and specifications on file in the office of the commission. The instructions to bidders issued by the commission were accompanied by an estimate of the several amounts of work to be done and item No. 28 thereof was as follows: ' For rock excavation all depths, 1800 cu. yds.' The instructions also contained a statement as follows:

" ' The estimated quantities in the proposed schedule are not intended nor are they to be considered by the contractor as the actual quantities that may be required for the completion of the work, but they are reasonably close approximations and will be treated as final quantities only for the purpose of making comparisons of bids. Any increase or decrease in these quantities will be paid for or deducted proportionately.'

" The plans show that excavations will be required for two conduits and the grades therefor are shown on profile drawings. On the profiles are black lines designated as ' approximate rock line.' On the plan of the conduit known as the ' gas house conduit ' the black line runs as so shown for some distance along the surface of the ground and then at each end it appears to extend gradually underneath the surface of the ground to a point below the level on which the conduit is to be laid.

" The specifications provide: ' It is supposed that the location, size of pipes, drains, etc., are correctly shown on contract drawings but the commission does not so guarantee and no claims shall be made by the contractor on account of any structure being found in a position other than that shown on the plans.'

" Also, ' The commission shall have the right to make and order any alteration in the line, plans, or quantity of the work herein contemplated either before or after the commencement of the work. Any increase or decrease in the total quantity of work to be done caused by such changes shall be paid for or deducted as the case may be according to the schedule of prices stipulated in the proposal. If the total amount of work contemplated is decreased by such changes the contractor shall not claim damages for anticipated profits.'

" Also, ' The contractor shall take all responsibility of the work, shall bear all losses resulting to him on account of the amount or character of the work or because the nature of the land in or on which the work is done is different from what is assumed or was expected or on account of the weather, floods or other causes.' * * *

" The plaintiffs bid in pursuance of said advertisement and in their bid said: ' That he has (had) carefully examined and fully understands the contract plans and specifications hereto attached and has made a personal examination of the site of the proposed work and the character of materials to be encountered.' * * *

" Plaintiffs in excavating for the ' gas house conduit ' found that the rock ran nearer the surface of the ground than shown by the black line on the profile and extended beyond the points where it appeared by such line to be below the level at which the conduit was to be laid. It is alleged that it required the excavation of 1,652 cubic yards of rock in addition to the amount that would have been required had it been found exactly as shown by the black line mentioned. The approximate rock line on the other conduit included in the contract was considerably above the rock as it was found by the plaintiffs when the excavations were made therefor. The total rock excavated by the plaintiffs was about 2,200 or 2,400 cubic yards instead of the estimated amount of about 1,800 cubic yards.

" All rock excavations mentioned were paid for at the contract price from time to time as the work progressed without demand that other or higher prices be paid therefor. This action is brought to recover among other things the alleged cost of removing the 1,652 cubic yards of rock for the gas house conduit in excess of the bid price for excavating rock as stated in the proposal and contract.

" On the evidence before us the bid for work was based upon approximate estimates only and was given and accepted as such. The payments therefor were to be made according to the amount of work performed whether the same was greater or less than the quantities specified in the approximation. The instructions to

bidders, the plans and specifications, and the bid, show that the contractors were required to take all responsibility for the work and the amount of the several kinds thereof, the difficulties to be met with in doing the same, the exigencies of weather and floods, and changes that the commission might make therein causing an increase or decrease in the work to be done. No fraud or concealment by the commission is alleged. A variation in the estimate by the commission of the work to be done arising by mistake or inadvertence or by changes of work contemplated, was at the risk of the contractors.

" Before the contract was let one of the plaintiffs personally inspected the ground and examined the site of the dams and conduits and thereafter made his proposal with the statement therein as quoted above. The plaintiffs had, so far as appears, the same opportunity to make test holes and determine where the rock would be found when the excavations were made as the members of the commission representing the city.

" We are of the opinion that the plaintiffs took all risks relating to the extent and amount of rock and its removal and that the facts as claimed by them do not justify a recovery against the city therefor."

The *Leary* case was reviewed by the Court of Appeals in *Foundation Co.* v. *State of New York* (233 N. Y. 177, p. 184):

" A contract and specifications may contain representations as to existing physical conditions. If so, a bidder may rely upon them, even though it be provided that he shall satisfy himself by personal inspection and investigation as to their truth, where because of time or situation such investigation would be unavailing (*Faber* v. *City of New York*, 222 N. Y. 255); or statements may be made on which the bidder, because of the language of the contract, cannot rely. He may have agreed that he will not. Then if they are made in good faith he takes the risk of their accuracy. (*Leary* v. *City of Watervliet*, 222 N. Y. 337; *Matter of Semper* v. *Duffey*, 227 N. Y. 151.) Such is the situation here even if we assume that the boring sheet was one of the documents upon which the bidder was entitled to base his bid. There was no bad faith. There was, so far as appears, an honest mistake on the part of the officers of the State. And the contractor agrees to make no claim because any estimate, test or representation affecting the work made by any such officer is erroneous. Aside from the boring sheet there is no representation. While the plan of the dam has no figures showing the depth of foundations, it is possible a scale would show that they are all above level 148. Yet, if so, they are to be ' considered as only approximate.' In the description of the work it is said of the pier adjoining

the caissons where the deepest excavation occurred, that its foundation was to be on bedrock ' at about elevation 156.' As a matter of fact it is at 147.75, and as to this no complaint is made. The claim is that the conclusion might be drawn that the adjacent caissons need not be deeper, but as to them no statement at all is made. And both these subjects are also covered by the agreement just referred to, deliberately made by the claimant. It is said both the state and the contractor were mistaken both as to a most important fact. It may be so. It may be that the contract could have been abandoned on the ground of mutual mistake. Even if this be so, where completed no recovery can be had on the ground that the work was more expensive than the parties expected.

" If, however, notwithstanding the agreement as to honest mistake, damages might be recovered from the state for misrepresentations, upon which the bidder might rely, the boring sheet was not such a representation. It formed no part of the plans upon which the contract was based. It was not prepared or used for that purpose. It was an independent bit of information or supposed information in the possession of the state, to which the bidder resorted in making the investigations which it was required to make. If it relied upon this paper, it did so at its own risk. The most it could ask for in regard to this information was good faith. We are of the opinion, therefore, that this claim was properly disallowed by the Appellate Division."

In *Matter of Semper* v. *Duffey* (227 N. Y. 151) it was stated in the headnote that " A contractor in a proposal for the construction of a state highway stated that his information of the work to be done and materials to be furnished was ' secured by personal investigation and research and not from the estimates of the State Commissioner of Highways.' He in fact made his bid based upon such estimates, and, after the bid was accepted, refused to execute the contract upon the ground that his proposal was due to a misunderstanding on his part or a mutual mistake in that the statement in the estimates that certain materials could be obtained at a near-by place at a designated price, was erroneous."

The contractor sued to recover the certified check which he deposited with the State to become its property if his proposal was accepted and he failed to execute the contract. The court denied relief, saying (p. 154): " We held in *Faber* v. *City of New York* (222 N. Y. 255, 260) that where the contractor had no reasonable opportunity to discover the truth as to the position of bed rock and the evidence was sufficient to show that the contract was made by both parties on the understanding that the bed-rock was as indicated in the plan prepared by the city, the contractor might

recover for extra work but here the parties had entire equality of opportunity. The case is the same as any mutual misunderstanding as to price, source of supply, and the like. The proposal is made at the bidder's risk in these regards, certainly where no element of deception or inequality or inequity is presented. The bidder has forfeited the money accompanying his bid by failing to execute the contract. The result may seem harsh but the state properly protects itself by the strictness of its contract and the relator must be bound by the terms thereof as proferred."

In *Carfagno* v. *City of New York* (187 App. Div. 489) the contractor was denied recovery where there was an error in the drawings and the contract provided that the contractor would not be allowed to take advantage of any errors or omissions in the specifications and cautioned all bidders to make a personal examination of the location proposed for the work. (See, also, *Pearson & Son, Inc.*, v. *State of New York*, 112 Misc. 29; *Kuhs* v. *Flower City, etc.*, 104 id. 243.)

In *Odell* v. *City of New York* (206 App. Div. 68; affd., 238 N. Y. 623, no opinion), at pages 88 *et seq.*, the court passed on contractor's claim against the city for $404,625.12 for damages alleged to have been sustained by reason of the alleged misrepresentation of the city in the plans upon which the contractor made his bid. The contract and specifications were similar in many respects to the Lincoln drain contract and specifications. Plaintiff claimed the plans were representations or warranties which bound the city and rendered it liable for additional cost caused by mistakes therein; and that the contract, plans and specifications made representation as to existing physical conditions. The court dismissed the claim, saying: " Thus it will be seen that it' was expected that water would be encountered, but no one attempted to approximate the quantity. In the information for bidders, prospective bidders were cautioned to inspect the ground for themselves. There is no evidence in the record that this additional work was ordered by the city, or that the contractor did it under protest. When he found his original plant was inadequate, he installed additional pumps of his own accord and ran his drainage ditches in the manner he thought best.

" Apparently the amount of water encountered was an element unforeseen by all parties, and while one may regret the additional burden placed on the contractor, that burden arises through no misrepresentation on the part of the city, and he must bear it alone as best he may.

" Everything that could be done to put bidders on their guard as to the difficulties and dangers of the situation was done. They

were advised of the nature of the ground of operations, as disclosed by the borings, but were warned that they must satisfy themselves thereof, either by examination of the location of the proposed work, or by such other means as they might choose to adopt. Their attention was called to the uncertainty as to the amount of materials to be excavated, as well as their kind."

Not only this but a payment of the kind made to the contractor in the instant case is forbidden by the Constitution of this State.

The Constitution of the State (Art. 3, § 28) declares: "The Legislature shall not, nor shall the common council of any city, nor any board of supervisors, grant any extra compensation to any public officer, servant, agent or contractor."

This is explicit and covers the case exactly, and if the referee is right in his construction of the contract in question the Constitution is final and conclusive as to the right and authority of the common council of the city of Lockport to take the action it did.

In the case of *Gordon* v. *State of New York* (233 N. Y. 1) the Legislature had passed an act conferring on the Court of Claims the right to hear and determine claims and make awards for increased costs incurred by contractors for building State highways under contracts made prior to the entry of this nation into the World War, such costs being greatly increased by the rise in the cost of material and labor.

In a very able opinion by Judge HOGAN, speaking for the Court of Appeals, it was held that the Legislature was inhibited from appropriating any money based upon gratitude and charity so far as officers and contractors are concerned, and under the provision of the Constitution quoted the act as unconstitutional and void.

The *Gordon* case was followed by the later case of *McGovern* v. *City of New York* (234 N. Y. 377).

In this case a party had made a contract with the city of New York for the construction of a subway. Employees of the contractor went on a strike, and the city officials then made an agreement by which the city agreed, if the contractor would settle the strike by paying increased wages to workmen, the city would pay the increased cost of labor and material due to the war from April 6, 1917.

The court held this action was condemned by the clause of the Constitution against the payment of extra compensation to contractors.

The referee entertains no doubt but that the action of the common council of the city of Lockport awarding extra compensation to the contractor was unauthorized, illegal and void.

The learned corporation counsel, however, contends on behalf of

the city that this is an appeal simply from the assessment levied; that no appeal has been taken from any of the ordinances passed, by the common council leading up to levying and confirming of the assessment, and that the referee in the absence of such an appeal cannot inquire into the questions discussed in this opinion, but is confined to a consideration as to whether the assessments made are fair, equitable and right, without going into the question of the right of the council to order an assessment for the total cost of the drain.

In this contention the referee does not concur. If the council had no right to allow and pay the contractor extra compensation then it had no right to order any assessment based on the extra compensation. The assessment itself must fall for want of authority to make it. Taking the view the referee entertains as to the validity of the assessment attacked we deem it unnecessary to pass on the questions litigated as to the equity and reasonableness of individual assessments made against particular parcels of land. Much of the evidence given on the hearing related to an effort to show certain parcels were assessed in amounts in excess of the benefits conferred by the building of the sewer. In view of the fact that the referee is of the opinion that the entire assessment is illegal and should be set aside, it becomes unnecessary for him to pass on the assessment made against particular parcels of land, and he does not undertake to do so.

Nor is it necessary for the referee to discuss the numerous other grounds alleged as a basis for setting aside the assessment, there being in all some thirty grounds alleged as the basis of the granting of the appeal here taken.

The assessment appealed from in this proceeding is set aside, with costs to the appellants.

Let formal findings be prepared for the signature of the referee in accordance with the views above expressed.