■ P. T. & L. Construction Company, Inc., Appellant, v State of New York, Respondent.—Weiss, J. P.

In June 1973 claimant contracted with the State to construct a three-mile section of Interstate Route 88 and to relocate and construct a three-mile segment of State Route 8 near the Town of Sidney in Delaware County, which involved the relocation of almost four million cubic yards of material. The project cost exceeded $17 million and was to commence in July 1973 and be completed by December 24, 1975. The contract contained a provision for liquidated damages at the rate of $500 per day for delay in completion. Claimant encountered a number of problems which caused a delay of approximately two years in completion, as a result of which the State imposed an assessment of liquidated damages and made back charges for additional engineering expenses, as well as a chargeback for the cost of repairing a railroad crossing.

Claimant commenced this action seeking relief from the liquidated damages and extra engineering expenses and to recover its own damages for breach of contract, change order

work and contract deductions.[1] After an extended trial, the Court of Claims rendered an exhaustive decision finding, *inter alia,* that claimant was responsible for the delay in completion of the construction, that the State had not breached the contract or underpaid claimant on revised contract work in the vicinity of Cole Road near Route 8, and that the State was liable to claimant in the sum of $6,500 for lost profit and fixed overhead based upon the deletion from the contract of the item involving engineering vehicles. The court also found the State liable for $8,950 for extra work on a fishing access area and $18,509.41 for excess contract withholdings pertaining to the repairs of a certain railroad crossing.

Claimant's appeal is limited to the dismissal of its causes of action seeking recovery of liquidated damages (No. 3) and recovery of damages for change order work in the vicinity of Cole Road (No. 9). Claimant is also appealing the adequacy of damages awarded on the causes of action for damages for deletion of furnishing survey vehicles (No. 4), extra work at a fishing access area (No. 7) and recovery of the cost of railroad crossing repairs withheld by the State (No. 12).

The State withheld $199,334 as per diem liquidated damages for delay by assessing the full per diem sum of $500 for the period from December 25, 1975 to December 20, 1976 and thereafter a reduced sum of $89 per day from December 21, 1976 until July 15, 1977. The State also assessed the cost of additional engineering expenses of $377,157.22 incurred during the period following the contract completion date. These sums were withheld from payments otherwise due to claimant pursuant to the contract. In cause of action No. 3 claimant sought recovery of the sums withheld, contending that the delay was caused by the State and by extraordinary events beyond its control. Claimant contends that the imposition of liquidated damages is not permitted where both parties are found to be mutually responsible for the delay, citing to *Mosler Safe Co. v Maiden Lane Safe Deposit Co.* (199 NY 479, 489) and *Babylon Assocs. v County of Suffolk* (101 AD2d 207, 217).

Initially, we find that the Court of Claims' determination absolving the State from liability for the delay in completion of the contract work is amply supported by evidence in the record. Claimant's initial delay was caused by its failure to properly mobilize on this project because it simply had too

---

1. Claimant also sought damages for misrepresentation relating to soil materials. That claim was dismissed and is not part of this appeal.

many other projects in progress and failed to properly mobilize its resources for this job. The substantial loss of the 1973 construction season was attributable to claimant and not to an alleged three-week delay in the State's issuance of the "notice to proceed".[2] In concluding that claimant was substantially at fault for not completing the contract on time, the Court of Claims discussed the three factors which claimant alleged contributed to the delay over which the parties had no control, i.e., rainy weather, the Arab oil embargo and claimant's financial difficulties. The court found that while the latter two may have caused some project delay, they were not sufficient to warrant waiving liquidated damages for failure to timely complete the contract. The excessively rainy weather during the latter half of the construction time period was a contract risk faced by all contractors and assumed in this case by claimant when it bid upon the job *(see, Gordon v State of New York,* 233 NY 1, 6-8). The court rejected claimant's argument that the State should be held responsible for delays caused by limitations it imposed upon the operation of the borrow pits. Since the court's findings in these regards were based upon its first-hand assessment of the evidence, they are entitled to deference by this court *(see, Saulpaugh v State of New York,* 132 AD2d 781, 782).

Claimant next contends that it should not have been held responsible for the full amount of the engineering expenses incurred after the contract completion date and that the State failed to give "due consideration" to "extenuating circumstances beyond the control of the contractor" prior to assessing these charges. We disagree. The regional construction engineer for the Department of Transportation testified that due consideration was given to the prevailing circumstances and that the imposition of the State's actual engineering expenses was a provision of the contract, similar to the provision for per diem charges for delay in the contract completion. We find neither a basis for disturbing the decision of the Court of Claims with respect to the liquidated damages or to the imposition of the additional engineering costs.

---

2. A "notice to proceed" is a prerequisite to commencement of construction work. The contract bids were opened on May 24, 1973. In June 1973, the State indicated to claimant that there was a substantial amount of documentation to be completed. Claimant submitted a tentative construction schedule to the State at a preconstruction conference held on June 28, 1973 proposing a July 1, 1973 commencement date. At that time the contract had not been fully executed. The notice to proceed was dated July 20, 1973. Claimant failed to demonstrate that the State delayed or was untimely in the issuance of the notice to proceed.

A clause in claimant's contract provided that it would furnish up to five vehicles for use by the State's engineers in surveying the work. The State unilaterally deleted the item and instead used vehicles provided by the consulting engineers on the project. The Court of Claims found that the deletion was a breach of a contract term by the State and awarded claimant $6,500 on cause of action No. 4. Claimant contends that the damages are inadequate and should be $10,000, which represents lost profit and fixed overhead associated with the item. The record, however, shows that some of the damages sought by claimant were estimates of unanticipated expenses it would have incurred in performance of the disputed item and that claimant failed to sustain its burden of proving that its actual damages were anything other than the approximations made in the preparation of its bid (see, *Novak & Co. v Facilities Dev. Corp.*, 116 AD2d 891, 892). We are unpersuaded that the court erred in awarding $6,500 on this cause of action.

Claimant was required to perform additional work to construct a fishing access site on the north side of the Susquehanna River. In its decision on cause of action No. 7, the Court of Claims found that the work was similar to the contract work and, except for material used to construct embankments, was only quantitatively different. Claimant's bid described embankment material as simply material excavated during the job, whereas on this claim for extra work claimant contends that it was required to use a combination of "5/8" excavated material and "3/8" borrow material, the cost of which exceeded the unit price it had provided in the contract.[3] In its decision, the Court of Claims agreed and found that the additional borrow material required for the embankment construction was qualitatively different in cost and arrived at a price by combining the contract unit price for excavating and removing cut material with the contract unit price for the placement of embankment construction material. Judgment was awarded for the difference in the price claimant was paid by the State for the material and the higher price determined by the court. Claimant's contention that the entire fishing access site work was qualitatively and not merely quantitatively different was a disputed question of fact resolved against it at trial. We find that the conclusions by the

3. Borrow material is material brought to the construction site from external sources such as a gravel pit as compared with material relocated from cuts. Cuts are excavations required by the contract.

court have substantial support in the record and defer to its determination (see, Saulpaugh v State of New York, supra).

In cause of action No. 9, claimant contends that on June 1, 1977 the Department of Transportation ordered a change in the work to be performed near the intersection of Thorp Hill Road and Cole Road and that the unit costs set forth in the contract no longer reflected actual costs which had become far more expensive during the intervening years, particularly since the change order was made many years after the contract bid had been prepared. The record shows that although the December 24, 1975 completion date had expired, claimant was still on the job and had not even started the contract work at the site of the change order work. The record supports the finding that the change order work was of the nature contemplated by the contract, was quantitative in nature and actually resulted in a net reduction of the work originally required in the contract. Since that segment of the contract work remained incomplete at the time of the change, it was appropriate for payment to be awarded at the original contract unit prices.

In cause of action No. 12, claimant sought to recover contract sums otherwise due and certified but withheld to satisfy the claims of damage to certain railroad tracks. The contract contained provisions for withholding an amount to cover such costs but required that claimant first be directed to make any necessary repairs. In the event claimant failed to make the repairs, the owner of the railroad, with the approval of the State's engineer, could then take whatever steps were necessary to restore safe conditions; if the cost of repairs was approved by the State's engineer, they would become a charge against claimant which could be deducted from the sums due claimant.

The controversy here involves damage to the West Street railroad crossing caused by claimant's overweight off-road equipment. The cost of repair for earlier damage inflicted in 1974 had been settled for $3,000. The railroad's owner submitted bills of $10,060.73 for subsequent repairs in November 1976 and $24,509.41 in February 1977, both of which were rejected by claimant as overstated. The State failed to comply with the contract by either directing claimant to perform the repairs, authorizing the railroad's owner to make the repairs or approving the costs. Nevertheless, the State withheld the full amount of the bills from contract sums due claimant. The Court of Claims found that claimant was "victimized by an imaginative and new form of reverse featherbedding" as a

result of the State's failure to fulfill its obligations. The court compared the extent of damage in 1975 and the cost of those repairs with the 1977 bill for $24,509.41 and, after an adjustment for quantities and for inflation, found that $6,000 was a reasonable cost for those repairs. Inasmuch as the railroad's repair costs were overstated by $18,509.41, claimant was awarded that sum. The court also concluded that claimant failed to prove that the 1976 bill for $10,060.73 was either erroneous or excessive.

On this appeal, claimant contends that the State improperly paid the bills as submitted and indemnified itself by self-help in withholding the amount billed as damages. We agree. The failure to comply with the contract terms was a breach which placed a burden upon the State to demonstrate the reasonableness of the repairs in terms of need and expense if it sought reimbursement for a liability voluntarily paid (see, *Dunn v Uvalde Asphalt Paving Co.,* 175 NY 214, 217; *see also, McDermott v City of New York,* 50 NY2d 211, 217). Inasmuch as the State failed to justify the withholding, claimant is entitled to an additional $16,060.73 ($6,000 plus $10,060.73) on cause of action No. 12.

Mikoll, Yesawich Jr., Levine and Mercure, JJ., concur. Ordered that the judgment is modified, on the law, without costs, by increasing the sum to be recovered by claimant by $16,060.73 to a total $56,094.99, together with interest, and, as so modified, affirmed.