**CORBITT CO. v. UNITED STATES.**
No. 46227.

Court of Claims.
June 3, 1946.

Claude M. Houchins, of Washington, D. C., for plaintiff.

I. M. Gottlieb, of Washington, D. C., and John F. Sonnett, Asst. Atty. Gen. (S. R. Gamer, of Washington, D. C., on the brief), for defendant.

Before WHALEY, Chief Justice, and LITTLETON, WHITAKER, JONES, and MADDEN, Judges.

LITTLETON, Judge.

On November 15, 1940, the defendant, through the Quartermaster Corps, U. S. Army, issued an invitation for bids for, among other things, certain motor trucks complete with tires and tubes and certain other articles of equipment. The trucks with such equipment were referred to as "Six-Wheels—Six-Wheel Drive, Prime Mover for Anti-Aircraft Gun Mount, with Cargo Bodies, Closed Cabs & Winches, in accordance with U. S. Army Tentative Specification USA-LP-91-8211, dated November 12, 1940." Separate U. S. Army specifications were issued for the truck chassis and body with certain specified equipment

and accessories and for tires and for inner tubes. The several specifications issued with the invitation for bids and the bid as made became a part of the contract, Standard Form 32, which the bidder agreed to execute in the event his bid should be accepted.

Plaintiff's bid, filed November 23, 1940, was on the printed form and stated a unit price of $7,300, or a total of $1,460,000, for two hundred trucks complete with tires and tubes and other equipment and accessories as called for by the several specifications, with the right of defendant to increase the number of trucks to be furnished by one hundred. This bid was accepted December 10, 1940, and the formal contract was executed December 20, 1940. The additional one hundred trucks were ordered by Change Order B and three hundred trucks including the specified tires and tubes therefor were furnished. Six tires and six tubes, manufactured in accordance with separate specifications therefor (finding 2), were furnished with each truck.

The question presented is whether, under article 1 of the contract, plaintiff is entitled to recover the amount of $2,340 representing the increased Federal excise tax made effective October 1, 1941, on three hundred tires and three hundred tubes. The excise tax rates on the sale by the manufacturer of tires and tubes in effect at the time the contract was made in December 1940 were 2¼ cents a pound on tires and 4 cents a pound on tubes. By section 535 of the Revenue Act of 1941, 55 Stat. 687, 709, 26 U.S.C.A. Int.Rev. Acts, page 122, effective October 1, 1941, the excise or sales tax rate on tires was increased to 5 cents a pound and that on tubes was increased to 9 cents a pound, and section 553 of the same act, Section 3453, Internal Revenue Code, 26 U.S.C.A. Int.Rev.Acts, page 136, provided as follows:

"(a) Tax Payable by Vendee.—If (1) any person has, prior to the effective date of Part V of Title V of the Revenue Act of 1941, made a bona fide contract for the sale on or after such date, of any article with respect to the sale of which a tax is imposed by that Act or an existing rate of tax is increased by that Act, and (2) such contract does not permit the adding to the amount to be paid under such contract of the whole of such tax or increased rate of tax, then (unless the contract prohibits such addition) the vendee shall, in lieu of the vendor, pay so much of the tax as is not so permitted to be added to the contract price.

"(b) Tax Paid to Vendor.—Taxes payable by the vendee shall be paid to the vendor at the time the sale is consummated, and shall be collected and paid to the United States by the vendor in the same manner as provided in section 3467. In case of failure or refusal by the vendee to pay such taxes to the vendor, the vendor shall report the facts to the Commissioner who shall cause collection of such taxes to be made from the vendee."

Article 1 of the contract of December 20, 1940, provided as follows:

"* * * Prices set forth herein include any Federal Tax heretofore imposed by the Congress which is applicable to the material purchased under this contract. If any sales tax, processing tax, adjustment charge, or other taxes or charges are imposed or changed by the Congress after the date set for the opening of the bid upon which this contract is based and made applicable directly upon the production, manufacture or sale of the supplies covered by this contract, and are paid to the Government by the contractor on the articles or supplies herein contracted for, then the prices named in this contract will be increased or decreased accordingly, and any amount due the contractor as a result of such change will be charged to the Government and entered on vouchers (or invoices) as separate items.

"Prices herein do not include any Federal taxes from which exemption is granted, or as to which a credit or refund is provided for under the provisions of Section 401 of the Revenue Act of 1935 (Act of August 30, 1935, 49 Stat. 1014, 1025–26) as amended nor any tax imposed by a state, county, or municipality upon the transaction of this procurement of these materials; * * *."

Plaintiff was a manufacturer of the truck chassis and bodies and no tax was payable thereon under the Revenue Act of 1932, as amended, since the truck chassis and

bodies were manufactured for sale to the Government. (See finding 10.) The necessary tires and tubes as specified were ordered and purchased by plaintiff from the B. F. Goodrich Company, a manufacturer. Plaintiff's purchase orders specified that the tires and tubes must conform to certain specified Federal Specifications for tires and tubes, with which the Goodrich Company was familiar; stated that such tires and tubes were for use by plaintiff on a Government defense project, and gave the number of its contract with the Government. The Goodrich Company therefore knew that these tires and tubes were being purchased by plaintiff for use by the United States.

The sale by the Goodrich Company to plaintiff of the 300 tires and 300 tubes here in question was consummated after October 1, 1941, and the Goodrich Company collected from plaintiff, as a dealer, the tax which had been imposed by the Revenue Act of 1932, as amended, and as increased by the Revenue Act of September 20, 1941, effective October 1, 1941. The tax so charged to and collected from plaintiff was paid to the Government by the Goodrich Company.

Plaintiff argues in substance that both parties to the contract knew when it was made that beginning with the Revenue Act of 1918, 40 Stat. 1057, Congress had consistently (with the exception of the period from 1926 to 1932) imposed an excise or sales tax on truck and other automobile chassis and bodies and on tires and tubes as separate and distinct articles; that such statutes had recognized that these taxes had been collected by the manufacturer from the purchaser but in most cases had imposed the tax on the manufacturer for administrative convenience; that article 1 of the contract of December 20, 1940, included in the contract unit price of $7,300 for each truck the sales tax on tires and tubes at the rates of 2¼ and 4¼ cents a pound, respectively, in effect under the Revenue Act of 1932, as amended, when the contract was made, and that the contract by article 1 intended that the payment by plaintiff of any increase in the existing tax rates on tires and tubes made directly applicable to any tires and tubes required to

be furnished with the trucks called for by the contract would be reimbursable to plaintiff through an adjustment increasing the contract price under the provisions of article 1 thereof. Plaintiff also argues that section 553 of the Revenue Act of 1941, quoted above, required it to pay the increased tax imposed by section 535(a) and (b) on the tires and tubes in question which were sold to it after October 1, 1941, and made it legally liable to the Government therefor. Section 553 was in substance the same as similar sections in prior Revenue Acts dating from the Revenue Act of 1921. See section 906, Revenue Act of 1921, 42 Stat. 227; section 605, Revenue Act of 1924, 43 Stat. 253, 26 U.S.C.A.Int.Rev. Acts, page 95, and sections 422 and 423, Revenue Act of 1928, 45 Stat. 791, 26 U.S. C.A.Int.Rev.Acts, pages 442, 443. Such provisions making the purchaser from the manufacturer liable for the tax were customary and were considered necessary when the existing tax rates were increased or when the tax which had been repealed was reimposed.

The defendant argues that the only articles called for by the contract of December 20, 1940, were "trucks"; that no tax was payable on such trucks and none was collected; that the increased tax in question on tires and tubes was not applicable to or paid on the "supplies covered by this contract," within the meaning of article 1 thereof, and that the rule announced and applied in United States v. Cowden Manufacturing Company, 312 U.S. 34, 61 S.Ct. 411, 85 L.Ed. 497, prevents recovery by plaintiff. It further argues that Congress did not by section 553, supra, impose the burden of the increased tax on plaintiff, and that such increased tax was not "paid to the Government by the contractor" as required by article 1 as a condition to the right of plaintiff to claim reimbursement therefor through an adjustment increasing the contract price.

Counsel for both parties argue that the provisions of section 401 of the Revenue Act of 1935, 49 Stat. 1014, 1025, 1026, referred to in the third paragraph of article 1 of the contract, supra, have no application to the tax on the tires and tubes here in question. The defendant's argument is that

plaintiff paid the amount of the tax to the Goodrich Company as a part of the purchase price of the tires and tubes and did not pay it as a tax. Plaintiff's argument is, in effect, that the Revenue Act of 1935 did not exempt it from the tax on the tires and tubes in view of its contract with the Goodrich Company and in view of the provision of section 553 of the Revenue Act of 1941, supra, which made it liable as a dealer for the tax increase.

This case involves a different set of facts, both as to the nature and effect of the tax and the intention of article 1 of the contract, from the facts and the effect of the contract provision involved in United States v. Cowden Manufacturing Company, supra. In the case at bar the facts show that the parties and article 1 of the contract intended to deal with the taxes in question. Although the contract unit price of $7,300 was for each truck complete with tires and tubes, the contract and specifications recognized that the tires and tubes were separate and distinct articles and separate specifications were issued therefor. The invitation for bids, the specification, and the formal printed bid form expressly dealt with the tax on truck chassis and bodies and on tires and tubes under existing law as set forth in the Revenue Act of 1932, as amended, and under the Revenue Act of 1935, supra, as well as under any future law of Congress which might change or increase the tax. However, the facts in this case as to the manner in which the parties and the contract provisions dealt and intended to deal with the tax on the tires and tubes in question make it unnecessary for us to consider whether this case is or is not controlled by the decision in United States v. Cowden Manufacturing Co., supra.

The facts in this case when applied to the applicable provisions of the pertinent taxing statutes relating to the excise or sales tax on tires and tubes establish that neither the B. F. Goodrich Company, the manufacturer, nor plaintiff as the vendee or dealer with respect to the tires and tubes, was required by law to pay a tax on the tires and tubes in question, either under the taxing acts in effect at the time the contract was made or under the Revenue Act of September 20, 1941, section 535, supra.

Plaintiff's accepted bid and article 1 of the contract recognized this factual and legal situation. The difficulty which gave rise to plaintiff's claim under the contract was due to the fact that neither the Goodrich Company nor plaintiff made application for exemption from the tax on the tires and tubes under the provisions of the Revenue Act of 1935, hereinafter referred to, which was expressly mentioned in article 1 of the contract. The mere fact that in their transactions concerning the tires and tubes in question (findings 5–8) the plaintiff and the Goodrich Company elected to pay the tax on such tires and tubes at the rates set forth in the Revenue Act of 1932, § 606(a), 26 U.S.C.A. Int.Rev. Code, § 3403(a), as amended by section 210 of the Revenue Act of June 25, 1940, 54 Stat. 516, 522, 26 U.S.C.A. Int.Rev.Code, § 1650, and section 535 of the Revenue Act of 1941, supra, instead of obtaining an exemption certificate with respect to such tax, as permitted by section 401 of the Revenue Act of 1935, supra, does not entitle plaintiff to reimbursement for such tax under article 1 of the contract of December 20, 1940.

At the time the contract in suit was made the excise or sales tax here involved had been in effect continuously (with the exception of the period February 26, 1926 to June 6, 1932) since the effective date of the Revenue Act of 1918, section 900, 40 Stat. 1057, on automobile truck chassis and bodies; other automobile chassis and bodies; motorcycles, and on tires and tubes at specified rates as separate and distinct taxable articles complete in themselves, and such taxing act recognized and provided for the payment of such tax on tires and tubes even though sold on or in connection with a truck, an automobile or a motorcycle. For administrative convenience the obligation for the tax and its payment to the Collector of Internal Revenue was imposed upon the manufacturer on the first sale of the taxable articles by him, but, as shown in the various provisions of the taxing statutes, such as section 553 of the Revenue Act of 1941, and certain Committee Reports on the Revenue Acts, the tax was recognized as a sales tax which would in fact and in practice be paid to the manufacturer

by the person to whom the manufacturer sold the articles subject to tax.

The case of Indian Motorcycle Company v. United States, 283 U.S. 570, 51 S.Ct. 601, 75 L.Ed. 1277, held that the tax on a motorcycle was not payable when such motorcycle was sold by a manufacturer to a governmental agency or instrumentality of a State. Following this decision the Congress by section 4(a) and (c) of the act of June 16, 1933, 48 Stat. 254, 255, amended sections 620 and 621 of Title IV, Revenue Act of 1932, 47 Stat. 169, 267, so as to exempt from the tax all sales by a manufacturer or producer or by his vendee of any article taxable under Title IV, Revenue Act of 1932 (which title included the tax on tires and tubes), to a State. These amendments by the Act of June 16, 1933, were as follows:

"Under regulations prescribed by the Commissioner with the approval of the Secretary, no tax under this title shall be imposed with respect to the sale of any article—

"(1) for use by the vendee as material in the manufacture or production of, or as a component part of, an article enumerated in this title;

"(2) for resale by the vendee for such use by his vendee, if such article is in due course so resold;

"(3) for resale by the vendee to a State or political subdivision thereof for use in the exercise of an essential governmental function, if such article is in due course so resold.

"For the purposes of this title the manufacturer or producer to whom an article is sold under paragraph (1) or resold under paragraph (2) shall be considered the manufacturer or producer of such article. The provisions of paragraphs (1) and (2) shall not apply with respect to tires or inner tubes or articles enumerated in section 604 relating to the tax on furs.

\* \* \* \* \*

"(c) Effective fifteen days after the date of the enactment of this Act, section 621(a) of the Revenue Act of 1932 is amended by inserting after paragraph (2) thereof the following new paragraph:

"(3) to a manufacturer, producer, or importer in the amount of tax paid by him under this title with respect to the sale of any article to a dealer, if the manufacturer, producer, or importer has in his possession such evidence as the regulations may prescribe that (A) such article has after the date this paragraph takes effect been delivered by the dealer to a State or political subdivision thereof for use in the exercise of an essential governmental function and (B) the manufacturer, producer, or importer has repaid or agreed to repay the amount of such tax to the dealer or has obtained the consent of the dealer to the allowance of the credit or refund."

The above amendment to section 621(a), Revenue Act of 1932, related to refunds and credits.

The report of the Senate Finance Committee (Report No. 58, 73d Congress, 1st Session) stated on pages 2 and 3 with reference to the above amendments as follows:.

"Section 4(a) amends section 620 of the Revenue Act of 1932. Under existing law a manufacturer may sell tax free to a State or political subdivision, but sales to a dealer are subject to tax, even though the dealer purchases the articles for resale to a State or political subdivision. This discrimination results in a loss of business to the dealers, who are unable to compete with manufacturers for State business, and does not add any substantial gain in revenue to the Federal Government. The bill gives a tax exemption in the case of sales to a dealer when it is known that the articles are to be resold to a State or political subdivision. To safeguard the revenue the exemption is conditioned upon subsequent proof that the articles are actually so resold.

"Dealers in articles for further manufacture are placed at a similar disadvantage. Under existing law, manufacturers may sell articles for further manufacture tax free when the sale is direct to another manufacturer and not when the articles pass through the hands of a dealer. The bill rectifies this situation in the same manner as in the case of articles to be resold to a State or political subdivision.

\* \* \* \* \*

"Section 4(c) amends section 621(a) of the Revenue Act of 1932. The effect is to provide relief (by way of credit or refund) for dealers who sell to State or political subdivisions thereof taxable articles which they have not purchased tax free under section 620 as amended by section 4(a) of the bill. * * *"

By Title IV, Section 401(a), (b) and (c) of the Revenue Act of 1935, 49 Stat. 1014, 1025, 1026, Congress further amended 620 (3), 621(a) (3) and 621(c) of the Revenue Act of 1932 as amended by the Revenue Act of 1933, supra, as follows:

Sec. 401. Amendments to Title IV of the Revenue Act of 1932.

"(a) Section 620(3) of the Revenue Act of 1932, as amended, is amended to read as follows:

" '(3) for the exclusive use of the United States, any State, Territory of the United States, or any political subdivision of the foregoing, or the District of Columbia.'

"(b) Section 621(a) (3) of the Revenue Act of 1932, as amended, is amended to read as follows:

" '(3) to a manufacturer, producer, or importer, in the amount of tax paid by him under this title with respect to the sale of any article to any vendee, if the manufacturer, producer, or importer has in his possession such evidence as the regulations may prescribe that on or after the first day of the second month following the date of the enactment of the Revenue Act of 1935 —

" '(A) such article was, by any person—

" '(i) resold for the exclusive use of the United States, any State, Territory of the United States, or any political subdivision of the foregoing, or the District of Columbia;

*    *    *    *    *

" '(B) The manufacturer, producer, or importer has repaid or agreed to repay the amount of such tax to the ultimate vendor or has obtained the consent of the ultimate vendor to the allowance of the credit or refund.'

"(c) Section 621(c) of the Revenue Act of 1932, as amended, is amended to read as follows:

" '(c) Interest shall be allowed at the rate of 6 per centum per annum with respect to any amount of tax under this title credited or refunded, except that no interest shall be allowed with respect to any amount of tax credited or refunded under the provisions of subsection (a) hereof, and except that no interest shall be allowed for any period prior to the first day of the second month following the date of the enactment of the Revenue Act of 1935.'

"(d) The amendments made by this section shall become effective on the 1st day of the second month following the date of the enactment of this Act."

The foregoing amendments in the acts of 1933 and 1935 as to exemptions from tax and the matter of refunds and credits applied to tires and tubes sold or resold to a State or the United States.

The Senate Finance Committee Report (No. 1240, 74th Congress, 1st Session) on the Revenue Act of 1935 stated, at pages 12 and 13, in explanation of the amendments, as follows:

"Your committee has made the following amendments to the Revenue Act of 1932 with respect to the manufacturers' excise taxes:

"(1) Section 620(3) of the Revenue Act of 1932, as amended, is amended to permit the tax-free sale of any article taxable under title IV of the Revenue Act of 1932 sold by the manufacturer or producer to or for the exclusive use of the United States, any State, Territory of the United States, political subdivision thereof, or the District of Columbia. At the present time sales to (or for resale by the manufacturer's vendee to) States or political subdivisions are exempt only in cases where the articles sold are to be used in connection with an essential governmental function. The amendment exempts all sales to States or political subdivisions for exclusive use by them regardless of whether or not the articles are to be used for an essential governmental function, and permits more than one dealer in the chain of sales. This eliminates the administrative difficulty of determining whether activities of a State or political subdivision are of a proprietary or governmental character. So far as sales for the use of the United States are concerned,

140

there appears to be no compelling reason for requiring the taxability of such sales, since the collection of the tax merely results in taking money from one department of the Federal Government and paying it over to another, and it also seems equitable to exempt sales for the use of the territories and possessions.

"(2) The amendment to section 621(a) of the Revenue Act of 1932 will permit a refund or credit of the tax paid by any manufacturer or producer on his sale of an article if such article is eventually resold through one or more vendees to the United States, any State, Territory of the United States, political subdivision thereof, or the District of Columbia. * * * All these refunds are allowed to the manufacturer for the benefit of the vendor to the user. These refunds apply to cases where sales could be made tax free by the manufacturer if he knew the ultimate use to be made of the articles.

"(3) Another amendment allows interest on refunds of overpayments of the manufacturers' sales taxes at the rate of 6 percent per annum. Such interest is allowed on refunds of other overpayments of internal-revenue taxes."

■ It is clear from the foregoing statutory provisions and committee reports that the tires and tubes here in question were not subject to the tax in effect prior to or at the time the tires and tubes were sold by the Goodrich Co., to plaintiff, and that under section 401 of the Revenue Act of 1935, which was expressly mentioned in article 1 of the contract in suit, both the Goodrich Company and plaintiff were entitled to exemption from such tax. Moreover, a refund (within the limitation period otherwise provided) of such tax as was paid on the tires and tubes in question at the old as well as the new rates was provided for in the act of 1935, since, as the Goodrich Company and plaintiff well knew, such tires were for Government use. Plaintiff's original purchase orders of June 6 and 30, 1941, advised the Goodrich Company that the tires and tubes must conform to certain Government specifications, ZZ-T-381c and ZZ-T-721b (with which Goodrich was familiar and that such tires and tubes were for Government use on "Gov-

ernment Defense Project #W-398-QM-9088," which was the plaintiff's contract of December 20, 1940, with the Quartermaster Corps of the United States Army.

■ On page four of the formal bid for the trucks complete with tires and tubes, as specified, plaintiff stated under paragraph 11(a) thereof that "Prices herein do not include any Federal taxes imposed by Title IV of the Revenue Act of 1932, as amended." The taxes imposed by said Title IV included the tax on tires and tubes. Therefore, it seems obvious from the facts and the express stipulation in Art. 1 of the contract that "Prices herein do not include any Federal taxes from which exemption is granted, or as to which a credit or refund is provided for under the provisions of Section 401 of the Revenue Act of 1935 (Act of August 30, 1935; 49 Stat. 1014, 1025, 1026); as amended," the parties intended that there was to be no increase or decrease in the contract price under that article on account of any increase or decrease of the tax of the kind imposed by Title IV, Revenue Act of 1932, as amended, on tires and tubes.

Plaintiff is not entitled to recover and the petition is dismissed. It is so ordered.

MADDEN, Judge, took no part in the decision of this case.