BATES CHEVROLET CORP., Claimant, *v.* STATE OF NEW YORK, Defendant. (Claim No. 28248.)

Court of Claims, February 6, 1948.

*Bernard Trencher* and *Stephen K. Rapp* for claimant.

*Nathaniel L. Goldstein,* Attorney-General (*Arthur W. Mattson* and *Sidney B. Gordon* of counsel), for defendant.

LOUNSBERRY, J. This matter was submitted to this court on an agreed statement of facts. In substance, about December 18, 1942, the claimant, Bates Chevrolet Corporation, entered into a contract with the State of New York, acting through the Division of Standards and Purchase, Executive Department, whereby the claimant undertook to sell and deliver to the State, for the use of the New York State Troopers, Division of State Police, 161 Chevrolet sedans. The contract provided that the invoice price should not include Federal excise taxes on the assumption that the State was exempt from the payment of such taxes, and also provided that the State would issue to the claimant all documents required by claimant to enable it to obtain refund of any such taxes paid by claimant by reason of the sale of such cars.

Claimant duly delivered the cars at a price exclusive of Federal excise taxes. It in fact paid such taxes on the chassis, tires and tubes in the total amount of $8,129. The State issued documents to the claimant to recover all of these taxes, and it did recover all of them except the excise tax on the tires and tubes in the amount of $950. Refund of the latter amount was refused by the Bureau of Internal Revenue, which refusal

occurred, according to the agreed statement, without any statement of the reason therefor, and without any fault on the part of the claimant.

The claimant now asserts that it is entitled to reimbursement from the State in the amount of the Federal excise tax paid by it on the tires and tubes.

With respect to the payment of the Federal excise taxes the agreed statement of facts includes the following:

" 10. The following statements are included in the contract between the parties hereto, and were made by defendant to the claimant on those portions of the contract indicated, as follows:

" a) Defendant's *Proposal No. 854* submitted to claimant by the defendant, and on which claimant entered its bid, contains the following:

" ' Tax: While excise tax is not to be included in bid price, bidder shall indicate in each item what the excise tax for the unit bid on would ordinarily be, for other than State purchase.'

" b) Defendant's *Order No. H–66* to claimant contains the following:

" ' New York State is exempt from payment of all federal and New York State taxes except social security, unemployment insurance and like taxes. Do not include taxes when submitting invoices.'

" 11. The intent and understanding between the parties hereto in entering into and executing the contract herein, and which intent and understanding was expressly and impliedly made part of the contract herein, provided for the following:

" a) That claimant would exclude from its prices quoted in its bid and charged to defendant, all federal excise taxes on chassis, tires, and tubes which claimant paid or would be required to pay.

" b) That defendant was a tax-exempt agency.

" c) That defendant would furnish to the claimant all documents required by claimant to enable it to obtain refund of federal excise taxes paid by it by reason of its sale of the aforesaid vehicles to defendant."

The claimant contends, first, that the above-mentioned provisions of the contract contained an implied term that the claimant would be reimbursed by the Federal Government for all Federal excise taxes which it had paid, for breach of which the claimant is entitled to recover the amount of tax not so reimbursed.

We are unable to read any such term into the contract. Undoubtedly, the parties assumed that the transaction would be wholly tax-exempt, but it does not follow that the State guaranteed reimbursement of the tax paid. Furthermore, it is difficult to conceive how claimant's inability to secure the refund constituted a breach by the State of any contract. Breach of contract implies some action or failure to act contrary to the provisions of the contract. The State neither took any action which defeated the refund application, nor neglected any action which might have resulted in its collection by the claimant. It paid the agreed price and furnished the agreed tax exemption documents. The subsequent difficulties between the claimant and the Bureau of Internal Revenue were not of its causing and constituted no breach of any agreement between it and the claimant.

The claimant further contends that the State was in fact not a tax-exempt agency, so far as the tax on tires and tubes was concerned, and that the execution of a contract on the assumption that it was so exempt constituted a mutual mistake of law, from which claimant may be relieved under section 112-f of the Civil Practice Act. This section provides that where relief against mistake is sought, such relief shall not be denied merely because the mistake is one of law rather than of fact.

If there were in fact such a mutual mistake of law, we should be prepared to grant the relief sought. We think, however, that there was no mistake, and that the State was exempt from payment of the tax. The tax on tires and tubes in question is imposed on manufacturers, producers and importers by section 3400 of the Internal Revenue Code (U. S. Code, tit. 26). Section 3442, entitled " Tax-free sales ", as in effect at the time of the making of the contract, and so far as here relevant, provides that no tax is payable, under the chapter which includes the tire and tube tax, on the sale of any article for the exclusive use of any State. Section 3443 provides, so far as here applicable, that a credit against any tax under such chapter, or a refund, may be allowed or made to a manufacturer, producer or importer in the amount of the tax paid by him with respect to the sale of any article to any vendor, upon production of evidence that such article was by any person resold for the exclusive use of any State, and that the manufacturer, producer, or importer has repaid or agreed to repay the amount thereof to the ultimate vendor.

The regulations under these sections, 26 Code of Federal Regulations, Cumulative Supplement, section 316.24, as then effective, provided in part: "No sale may be made tax free by the manufacturer to a dealer for resale to the United States, any State, Territory of the United States, or any political subdivision of the foregoing, or the District of Columbia, even though it is known at the time of the sale that the article will be so resold. However, where any dealer resells a tax-paid article to any of the governmental units named above, for its exclusive use, the manufacturer who paid the tax to the United States on his sale of the article may secure a refund or credit in accordance with the provisions of § 316.204."

Section 316.204, above mentioned, deals with the necessary procedure whereby the manufacturer or producer may secure the refund or credit.

The foregoing makes it clear, we think, that the State was in fact exempt from payment of the tax in question. In support of this conclusion, see *Corbitt Co.* v. *United States*, (66 F. Supp. 129 [1946]), and *Richfield Oil Corp.* v. *State of New York* (160 Misc. 315 [1936]). This eliminates the possibility of relief on the ground of mutual mistake of law, and it further refutes the claimant's first contention as to an implied term of the contract. The State made no misrepresentation of its tax-exempt status, and therefore no undertaking to pay the tax can be implied. For the same reason, the cases cited by the claimant wherein the State was guilty of some misrepresentation of conditions affecting a contract, are inapplicable.

The foregoing also makes it clear that a refund procedure was available. We are left in the dark by the agreed statement of facts as to why the claimant failed to secure a refund, and can only surmise that either it failed to proceed correctly, or that the Bureau of Internal Revenue erred. In either event the State is not at fault. Claimant's remedy would appear to be against either the Federal Government or the manufacturer, not against the State.

There remains another element in the case. The agreed statement of facts sets forth excerpts from four letters addressed to the claimant by the Division of State Police, dated May 17, 1944, November 6, 1944, June 8, 1945, and July 3, 1945, respectively. The first of these, signed by the Superintendent of the New York State Troopers, states: "On checking this contract we find that the State of New York is subject to such Tire Excise Tax and such tax was eliminated from the specifica-

tions at the time the cars were purchased. We therefore feel that your claim is justifiable. Unfortunately, the funds which would be used for such purpose have long lapsed, and there is no appropriation available at this time to pay this claim. We intend to include in our next year's budget a deficiency item to cover the above amount. However, this will mean that you will have to wait approximately ten months for payment."

The second letter, signed by the deputy superintendent, states that such a deficiency item has been included in the division's 1945-46 budget and that the money will be available April 1, 1945. The third and fourth letters state in effect that although the money is in the budget, and a voucher has been approved by the division, payment has been held up by the Division of Standards and Purchase.

It is not wholly clear what effect the claimant attributes to this correspondence. Apparently it feels that it constitutes an admission that the State was not exempt from payment of the tax and that the claim was justifiable and would be paid.

We cannot conceive that the officers of the Division of State Police can bind the State with respect either to the law concerning tax exemptions or as to the interpretation of contracts. These matters are the province of the Departments of Law and Audit and Control, and of the Division of Standards and Purchase. Furthermore, section 41 of the State Finance Law expressly provides in part: " No state officer, employee, board, department or commission shall contract indebtedness on behalf of the state, nor assume to bind the state, in an amount in excess of money appropriated or otherwise lawfully available."

Neither can we perceive that the State has been unjustly enriched, as claimant suggests. It has secured nothing more than it contracted to secure, namely cars at a price not including Federal excise taxes. If anyone has been unjustly enriched, it is the Federal Government, which has retained a tax to which it apparently is not entitled.

Finally, although neither party has raised the matter, and it is covered only indirectly by the agreed statement of facts, we feel that the significance of the budgetary appropriation to pay the claim, mentioned in the foregoing correspondence, merits attention. In addition to the references in the correspondence, we have discovered in chapter 105 of the Laws of 1945, the following deficiency appropriation for the Division of State Police: " Equipment — replacements (for liabilities incurred prior to April 1, 1943) * * * $951." While we

cannot be certain, this has every appearance of being an appropriation by the Legislature to reimburse the claimant for the tax paid.

Assuming such to be the case, the question presents itself whether such action by the Legislature might be deemed in any way to constitute a binding requirement that the claim be honored. . We think not. In the first place section 19 of article III of the State Constitution expressly provides in part, " The legislature shall neither audit nor allow any private claim or account against the state, but may appropriate money to pay such claims as shall have been audited and allowed according to law." Moreover, section 8 of article VII prohibits the gift or loan of money of the State to or in aid of any private corporation, association or undertaking, and section 10 of article IX provides that the Legislature shall not grant any extra compensation to any public officer, servant, agent, or contractor.

These provisions raise formidable constitutional objections to any suggestion that the appropriation binds the State to pay the claim. It is true that there is a line of cases holding that the Legislature may recognize claims based upon a moral or equitable obligation. (*Cole* v. *State of New York*, 102 N. Y. 48; *O'Hara* v. *State of New York*, 112 N. Y. 146; *Lehigh Valley R. R. Co.* v. *Canal Board*, 204 N. Y. 471; *Ausable Chasm Co.* v. *State of New York*, 266 N. Y. 326.) This is subject to two limitations, however, each of which is fatal in this instance. First, while the Legislature may recognize an equitable or moral claim, the audit and allowance thereof must be made by some appropriate tribunal, not the Legislature itself. (*Cole* v. *State of New York, supra*; *Carr* v. *State of New York*, 231 N. Y. 164; *Babcock* v. *State of New York,* 190 App. Div. 147.) The most that can be said, therefore, is that the Legislature recognized the claim and provided funds for its payment, subject to proper audit and allowance by this court or some suitable body. To construe the appropriation as mandatory, without such audit and allowance, would be to construe it as unconstitutional. (See *Gordon* v. *State of New York*, 233 N. Y. 1.)

Second, the claim must in fact have some equitable or moral foundation. The instances in which such claims have been allowed are well summarized in *People* v. *Westchester County National Bank* (231 N. Y. 465, 478): " In every case that we have found, therefore, there was the foundation of a claim against the state itself, however imperfect. In all there was some obligation, not enforcible against it, perhaps because it

might not be sued, perhaps because the maxim of *respondeat superior* may not be invoked against it, perhaps because of the absence of some small element, the presence of which would give a legal cause of action and where without that element payment might still be morally required. They are cases where the state is allowed to make compensation for benefits which it has received or for injuries which have been suffered in its service or because of its acts or acts done under its authority or because of the acts of its servants. So far at least when we have used the term we have implied an obligation — something that binds — if not in law, at least in morals. There must be a duty, even if it is a duty not enforcible."

We find no such equitable or moral foundation in this case. The increased expense to the claimant, we have shown, was not caused by any act of the State. " Equity and justice do not require the state to reimburse a contractor for the increased expense incurred by him in the performance of a contract due in no measure to the act of the state." (*Gordon* v. *State, supra,* p. 8.)

The claim must therefore be denied.

Findings of fact and conclusions of law may be submitted in accordance with this memorandum within ten days, otherwise this opinion will be considered the decision.

Let judgment be entered accordingly.